185 So.2d 210

Jacob J. KUHN

v.

STAN A. PLAUCHE REAL ESTATE COMPANY, Inc.

No. 47948.

March 28, 1966.

Rehearing Denied May 2, 1966.

Richard A. Dowling, New Orleans, for petitioner-appellant.

Landrieu, Calogero & Kronlage, Maurice E. Landrieu, New Orleans, for respondent.

SUMMERS, Justice.

This is a suit for real estate commission in which the real estate agent, Stan A. Plauche, Inc., obtained judgment in its favor in the trial court against Anthony Matrana, the prospective seller of the land. The judgment was affirmed on appeal to

the Court of Appeal, Fourth Circuit, 178 So.2d 296.

To properly present the background of the problem presented for adjudication, it is necessary that we recite the facts in more than the usual detail.

On November 6, 1961 Anthony Matrana signed a "Sale Authorization" in which he employed Stan A. Plauche, Inc., a real estate firm of New Orleans, to sell a parcel of land in Faubourg de Montluzin in Orleans Parish, the contract providing that the sale was to be for "$46,000.00 net to owner, all monies above net shall be commission to agent." The sale was to be for cash "or for any other price or terms hereafter agreed upon."

The agent then proceeded to advertise the property for sale by placing a sign thereon, preparing and circulating prospectuses of the property and, generally, promoting its sale in the ordinary course of business. During this time Mr. Stan A. Plauche, head of the real estate firm, visited Mr. Matrana to discuss the transaction and to promote his good will.

Then on January 4, 1962, Matrana signed an offer to sell the property in question for "43,000 net to owner" under credit terms providing that Matrana was to receive notes for the credit portion of the sale. No loan needed to be negotiated with others. Under this agreement Matrana was to pay the Plauche firm a commission equal to the difference between $43,000 and the actual price at which the Plauche firm could sell the property.

On the same day, in a separate instrument, the Plauche firm obtained the signature of Jacob J. Kuhn to an agreement to purchase the property for the sum of $52,-000, on credit terms which were stipulated. A deposit by the purchaser of 10% of the purchase price, or $5,200, was required, which could be declared forfeited in the event the purchaser (Kuhn) failed to comply with the agreement to purchase. Thereafter, but still on January 4, 1962, the Plauche firm retyped the "Agreement to Purchase" on an identical printed form as the one signed by Kuhn, omitting the name of Kuhn and typing therein in its stead "Agent for the Purchaser as per written original in my files," below which Stan A. Plauche, President of the firm, signed his name in that capacity. This agreement was submitted to Matrana who signed an acceptance printed thereon in these words: "I/we accept the above in all its terms and conditions." With respect to the agent's commission this document had inserted in the appropriate blank these words: "see agreement to sell," meaning that reference should be made to one or the other of the following: The agreement of November 6, 1961 providing that the commission should consist of all amounts over $46,000 net to the landowner or seller, or the agreement to

sell signed by Matrana on January 4, 1962 providing that the commission should consist of all amounts over $43,000 net to the landowner or seller.

Several days later Kuhn deposited the $5,200 required by the "Agreement to Purchase" which he had signed.

It then became known to the Plauche firm that Matrana had only a Bond for Deed whereby he was to purchase the property; and that since executing the Bond for Deed on October 17, 1952, his wife had died, and his two minor daughters became vested with a one-half interest in the Bond for Deed. It was necessary, therefore, in order to tender a merchantable title to the prospective purchaser (Kuhn), that Matrana, as tutor of his minor children, obtain court authorization to sell the property under the terms and conditions of the "Agreement to Purchase" signed by Kuhn and accepted by him. Accordingly a petition was addressed to the appropriate court seeking the necessary authorization. But, due to ex parte declarations of the judge to the effect that the commission was too much, and due also to the fact that the judge felt that the property was worth more than $52,000 (based on an appraisal which he had caused to be made), the petition seeking the authorization was withdrawn.

The time allowed for tendering a merchantable title under the "Agreement to Purchase" of January 4, 1962, having expired, Kuhn instituted suit against the Plauche firm and Matrana for the return of the $5,200 deposit held by Plauche. Plauche then reconvened against Kuhn and filed a cross claim against Matrana, alleging a breach of the contract by one or the other, or, alternatively, that it was entitled to a commission of $9,000, with interest, costs and attorney's fees. The reconventional demand was dismissed as to Kuhn, and there was judgment in his favor for the amount of the deposit—$5,200. Although he was represented by counsel at the time, Matrana did not appear in person or testify in his own behalf; and judgment was rendered in favor of the Plauche firm for the commission of $9,000, plus $1,500 attorneys' fees and costs.

Matrana's appeal to the Fourth Circuit resulted in an affirmance of the trial court judgment.

We granted certiorari on Matrana's application, 248 La. 438, 179 So.2d 275.

In his concise brief to this court Matrana's counsel argues simply that no commission was due to be paid until the act of sale took place, and, as there was no sale, no commission was due.

This position is based upon certain language of the agreement dated January 4, 1962, whereby Matrana agreed to pay all monies of the selling price above $43,000 as commission—this agreement having been

incorporated by reference into the contract which Matrana accepted. The printed portion of the agreement in question, insofar as it affects Matrana's contention here, provides:

. "If this offer is accepted, seller agrees to pay the agent a commission of *all monies above $43,000.00* of the selling price, which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan(s) if any, has been secured. Either party hereto who fails to comply with the terms of this offer, if accepted, or who fails to co-operate with Stan A. Plauche Real Estate, Inc., in securing the mortgage loan, is obligated and agrees to pay the agent's commission and all fees and costs incurred in enforcing collections and damages. (Italicized portion typewritten.)

Appearing in the document as the final stipulation after the entire printed portion is the following typewritten sentence: *"Seller agrees to pay the agent at the act of sale the amount of the commission in cash."*

As we understand counsel's argument on behalf of Matrana this final typed sentence supersedes anything to the contrary in the printed portion of the contract. A fair reading of the sentence, he says, permits the interpretation that the commission, because it was payable "at the act of sale," was not due until the sale took place. As no sale did take place, the condition upon which the payment of the commission was predicated did not occur; and, therefore no commission could be collected.

Counsel for the Plauche firm, however, asserts that by the quoted, printed language of the contract the commission is earned upon the signing of the agreement by both parties. He further maintains that adding a proviso that the commission shall be paid in cash at the act of sale in no way conditions the commission upon the passing of the act, but merely states a mutually acceptable and convenient time and method for the payment of the commission.

To say that a commission is earned by the agent at the time when the agreement is signed by both parties (which was on January 4, 1962) and when the mortgage loan(s), if any, has been secured (there were no loans to be secured here because seller agreed to carry the mortgage), and to also stipulate in the same instrument that the seller agrees to pay the agent the amount of the commission in cash at the act of sale, is to create a paradox. It serves no purpose for a commission to be earned if it is not payable until a sale takes place. For if it is payable "at the act of sale" it is certainly not payable before that time. It follows, therefore, that these inconsistent provisions must be reconciled.

Under elementary principles of interpretation of contracts, the written portions prevail over the printed portions when the two are in conflict; and, therefore, we find no difficulty in holding that the type-written sentence providing that the commission would be paid "at the act of sale" suspersedes the printed clause providing that the commission is earned when the offer is accepted. Dean v. Pisciotta, 220 La. 725, 57 So.2d 591 (1952) and authorities therein cited. This reasoning leaves only the provision which is type-written remaining. As we have already observed, because the agreement is to pay the agent "at the act of sale" it is premature to demand payment before that time.

There are many factors which persuade us to adopt this strict interpretation and reach this result. We believe Matrana understood the agreement in this fashion. At the outset, the ambiguity or contradiction which existed in the language of the contract must be construed against the party who prepared the contract. La. Civil Code arts. 1957, 1958; Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 125 A. L. R. 1075 (1939); St. Landry State Bank v. Meyers, 52 La. Ann. 1769, 28 So. 136 (1898); Ernest A. Carrere's Sons v. Rumore, 52 So.2d 57 (La.App. 1951). In this case that rule of law would require us to interpret the contract against the Plauche interest.

An unusually high commission ($9,000 plus $1,500 attorneys' fees) resulted to the real estate agent by the trial court judgment. The trial judge recognized this fact and refused to approve the sale of the minor's interest because of it. Mr. Kuhn observed that this high commission caused him to back away from the transaction and demand the return of his deposit after Matrana's time to tender a merchantable title had elapsed. The Court of Appeal observed that this was obviously a "hardship case." And we cannot disregard the unusual circumstance which the dissenting judge in the Court of Appeal noted relating to Matrana's agreement to reduce the sale from $46,000 to $43,000, and thus increase the commission on the very day when an offer of $52,000 was obtained from Kuhn. A satisfactory explanation for this adverse turn of events for Matrana is lacking. In view of the fact that the Plauche firm was representing Matrana from the inception of the negotiations, the fiduciary relationship between them would require some explanation. La. Civil Code art. 1958.

For the reasons assigned, the judgment is annulled, reversed and set aside.

FOURNET, C. J., and HAWTHORNE, J., concur in the decree.

McCALEB, J., dissents with written reasons.

McCALEB, Justice (dissenting).

I cannot agree that the typewritten provision that "seller agrees to pay the agent at the act of sale the amount of commission in cash" constitutes a condition which has the effect of superseding the printed agreement between the parties that the commission is earned by the agent at the time the agreement of sale and purchase is signed. In holding that a paradox was created by these provisions of the agreement the majority simply fail to realistically appraise the difference between the two provisions. For, one has to do with the earning of a commission for services rendered and the other relates solely to time of payment of the obligation. The latter should not, under the guise of interpretation, be converted into a so-called condition which operates to deprive the agent of the stipulated value of the services rendered by reason of the seller's failure or inability to comply with his obligation. On the contrary, when this is done the Court rewrites the contract clause, which refers to the date on which payment is due on a previously incurred contractual obligation, to read that the debt does not exist unless the sale is consummated no matter whether the breach of the executory agreement is due to the fault of either party. Thus, by this erroneous edict, the agent is not to be paid for the services rendered notwithstanding another specific provision of the sale agreement that "Either party hereto who fails to comply with the terms of this offer, if accepted, * * * is obligated and agrees to pay the agent's commission and all fees and costs incurred in enforcing collections and damages."

Article 1945 of our Civil Code provides that "Legal agreements having the effects of law upon the parties, none but the *parties* can abrogate or modify them"; that the courts are *bound* to give legal effect to all such contracts according to the true intent of the parties and that "the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences".

Application of this principle and the explanatory rules set forth in codal articles 1946, 1947, 1948, 1950, 1951 and 1955 is destructive of the majority's strained conclusion that the typewritten clause—that the commission will be paid at the time of the sale—somehow abrogates entirely the obligation to compensate the real estate agent for his services (admittedly earned according to the printed stipulation) because the sale could not be consummated due to the obligor's (seller's) inability to furnish a merchantable title.

It seems evident, from a reading of the majority opinion, that the Court is much concerned with the confection of the second exclusive listing agreement whereby Ma-

trana agreed to reduce the list price of the property from $46,000 to $43,000 on the same day the agent secured an offer of $52,000 and, as a result thereof, the agent became entitled to a commission of $9,000 or $3,000 more than originally agreed. I, too, am concerned. And the dissenting judge of the Court of Appeal (see 178 So.2d 299), believed that the circumstances surrounding the transaction are so highly suspicious as to warrant a remand of the case in the interest of justice.

However, suspicion cannot supplant pleading and proof and the case must be determined on the issues presented. Matrana does not claim fraud. In fact he did not even appear at the trial below and take the stand in his own behalf. Yet, the majority opine that "We believe Matrana understood the agreement in this fashion", (meaning, of course, that he believed no obligation was incurred to pay a realtor's commission if a sale was not consummated) even though he did not testify (and probably would not have been allowed over timely objection to testify) concerning his intent and belief that he was not liable. In fine, it is apparent that this deduction of the majority emanates from its own speculation and, surely, not from the evidence which, even if it had been elicited, would have been purely self-serving.

I respectfully dissent.