221 So.2d 249 (1969)
253 La. 946
Nelson HANKS et al., d/b/a The Hanks Company
v.
GULF STATES UTILITIES COMPANY.
No. 49349.
Supreme Court of Louisiana.
March 31, 1969.
Oliver P. Stockwell, Stockwell, St. Dizier, Sievert & Viccellio, Lake Charles, W. C. Hollier, Bailey & Mouton, Lafayette, for defendant-relator.
Mouton, Beard, Plaisance & Franques, Caliste Beard, Jr., Lafayette, for plaintiffs-appellees.
Wilkinson, Woods, Carmody, Meadows & Hall, Shreveport, Landry, Watkins, Cousin & Bonin, New Iberia, Monroe & Lemann, New Orleans, Davidson, Meaux, Onebane & Donohoe, Lafayette, Theo F. Cangelosi, John Schwab, Robert L. Cangelosi, Baton Rouge, B. R. Dickerson, Shreveport, Wiley G. Lastrapes, Daniel P. Hurley, New Orleans, for amici curiae.
BARHAM, Justice.
A Third Circuit Court of Appeal judgment affirmed the trial court's award of $5000.00 in damages based upon a holding that Gulf States Utilities Company, which had acquired a servitude over the plaintiffs' land in 1949, had trespassed upon the property of the plaintiffs in 1962 by modification of the supporting structure of an electric power line. 210 So.2d 345.
*250 In 1949 plaintiffs' ancestor in title granted to Gulf States Utilities Company the following servitude:
"* * * the right, privilege and servitude to enter upon and to erect, construct, extend, maintain, inspect, operate, replace, remove, repair, and patrol one or more lines of poles, frames or towers, which may be erected simultaneously or at some future time, with lines of wires, crossarms, guy wires, conduits, stubs, and other usual fixtures, appliances, and appurtenances used or adapted for the transmission of electricity, electric energy and power for any and all purposes for which electricity, electric energy and power is now or may hereafter be used, and for telephone and telegraph use, together with all necessary foundations, anchors and braces properly to support the same upon, over and across a strip of land out of the following described tract * *." (Deletion of the words "or more" and of the "s" on the word "lines" occurs in the original document.)
According to an agreed stipulation upon which the case was submitted, Gulf States constructed, on the center line described in the servitude agreement, one line of poles spaced 300 feet apart, with attached crossarms, wires, and the usual fixtures and appurtenances, over which it strung the lines for one 69,000-volt circuit. Without change except for the usual maintenance and repairs, electric energy was transmitted over the one circuit on this construction until January, 1962. Between January and May of 1962 Gulf States replaced the "single pole line" and erected an "H-frame line". An H-frame consists of double poles connected by a crossarm, and is so named because of its resemblance of the letter "H". One of the poles of each H-frame rested on the center line, and the other was placed 20 feet to one side of, and at right angle to, the center line. These doublepole structures, or H-frames, were approximately 450 feet apart. An additional circuit of 138,000 volts was strung with the original 69,000-volt circuit to form part of the transmission line between two stations operated by Gulf States.
The parties to this suit have limited the trial issues as well as our review by the following provision of the agreed stipulation:
"The Servitude Grant conferred upon Gulf States the right to erect, construct, maintain and operate the `H-Frame' line, and this proceeding solely involved the question of whether such right has been lost by the liberative prescription of ten years for failure to have so erected, constructed, maintained and operated said `H-Frame' Line within 10 years from the date of the Servitude Grant. * * *"[1] (Emphasis supplied.)
The trial court found for the plaintiffs, basing its judgment upon Civil Code Article 798[2] and reasoning that single-pole construction was a less extensive enjoyment of the right given in defendant's title and *251 that the servitude was accordingly reduced to that extent by prescription. The Court of Appeal in affirming apparently rejected the trial court's reasoning and applied Articles 789 and 796[3] on the theory that the defendant had been granted three modes of use of the servitudei. e., (1) poles, (2) frames, (3) towers, and that the right to construct H-frames had prescribed by non-usage for 10 years.
Most important to a consideration of the narrow issue before us is an understanding of what constitutes a servitude. While a servitude places an onus or burden upon an estate, it is created only for the purpose of producing a benefit, utility or advantage for another estate or person in whose favor it is granted. La.Civ.Code Arts. 646 et seq. "It is necessary * * * that the servitude have for its object the use or benefit of the estate in favor of which it is established." (Emphasis supplied.) La. Civ.Code Art. 650.[4]
To determine and define the servitude granted to Gulf States we must examine the title to ascertain what benefit, advantage or use it gave to the beneficiary. Gulf States' title was granted "* * for the transmission of electricity, electric energy and power * * *".[5] Obviously the grantee expected to benefit from and enjoy the servitude by using the servient estate in its system of transmitting electrical energy for "* * * all purposes for which electricity * * * is now or may hereafter be used". The construction of "poles, frames or towers" was not the servitude granted by the title. The "poles, frames or towers", of and by themselves, produced no benefit to the grantee, and the construction of these structures in great number and of every nature and kind would not be a realization of the servitude granted under this title. Not until electric power or energy was transmitted over and across the servient estate did the grantee derive any benefit or use, although the poles were constructed in anticipation of that eventual utility and service.
The right to construct poles, frames or towers is simply one of the accessory rights provided within the grant of servitude. The right to transmit electric power is the servitude. "Poles, frames or towers" cannot transmit electricity and are merely types of supporting structure for transmission lines or other transmitting devices. "Poles, frames or towers" are not modes of use, nor do they constitute three different servitudes as contended by plaintiffs' *252 argument.[6] Therefore the construction and maintenance within 10 years of only one of three types of structure named in the grant will not result in loss by liberative prescription of the right to construct another of these types of structure.
Although it is not argued that the trial judge's reasoning was correct, out of an abundance of caution we simply state that Article 798 of the Civil Code has no application to this case.
By stipulation the parties have asked the narrow question: Has the right originally conferred upon Gulf States to construct an H-frame line been lost by failure to erect such a line within 10 years from the date of the servitude grant? Our answer is negative, and therefore there was no trespass.
The judgment of the Court of Appeal is reversed and set aside, and the suit is dismissed. Plaintiffs are cast for all costs.
SUMMERS, Justice (dissenting).
Nelson Hanks and others, doing business as Hanks Company, filed this suit for damages which are alleged to have resulted from a trespass on their property by Gulf States Utilities Company.
Plaintiffs own the property on which their predecessor in title Delma Hanks granted a servitude to Gulf States Utilities Company on January 23, 1949. In consideration of $575 Hanks granted
"* * * the right, privilege and servitude to enter upon and to erect, construct, extend, maintain, inspect, operate, replace, remove, repair, and patrol one or more lines of poles, frames or towers, which may be erected simultaneously or at some future time, with lines of wires, cross-arms, guy wires, conduits, stubs, and other usual fixtures, appliances, and appurtenances used or adapted for the transmission of electricity, electric energy and power for any and all purposes for which electricity, electric energy and power is now or may hereafter be used, and for telephone and telegraph use, together with all necessary foundations, anchors and braces properly to support the same upon, over and across a strip of land out of the following described tract: (here follows a description of the 704.56 acre tract belonging to plaintiffs). * * * which strip of land upon which said servitude is granted is on each side of a center line particularly described as follows: (here follow the courses and distances of a line across the 704.56 acre tract of plaintiffs).
The agreement also provides the right to keep all trees and underbrush cut within fifty feet of the line and prohibits the erection of any structures within fifty feet of the line established in the agreement.
Soon thereafter, in 1949, Gulf States constructed an electric transmission facility along the line described in the agreement, consisting of a single row of poles 300 feet apart, each with an attached cross-arm, wires and the usual fixtures for the transmission of electricity. When completed, this installation carried one 69,000 volt circuit of electricity. The installation was maintained and in use until 1962.
Between January and May 1962 Gulf States removed the single pole line and thereafter constructed a new facility called an "H-Frame Line", consisting of a row of "H-Frame" double poles with attached cross-arms, wires and other usual fixtures, appliances and appurtenances used for the *253 transmission of electricity, electric energy and power. The "H-Frame" double pole structures were located approximately 450 feet apart. One of the double poles of each such "H-Frame" structure was located on the center line described in the servitude grant, and the other pole of each such "H-Frame" structure was located 20 feet west of, and at right angles to, the line established in the servitude grant. The "H-Frame" line thus constructed now carries the 69,000 volt circuit formerly carried by the single pole installation, plus an additional 138,000 volt circuit.
The question presented is whether the right to erect, construct, maintain and operate the "H-Frame" line has been lost by the liberative prescription of ten years. It is stipulated that, if that right has prescribed, plaintiffs are entitled to recover $5,000 as damages for the construction, operation and maintenance of the "H-Frame" line. On the other hand, if the right has not prescribed, plaintiffs can recover nothing.
The agreement, in my view, is vague, indefinite and confusing. It is prepared on a printed form furnished by Gulf States, and for that reason any ambiguity or uncertainty should be construed against Gulf States, the party who prepared the contract. La.Civil Code arts. 1957 and 1958; Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966).
The printed form provided for the erection of "one or more lines"; however, this was altered to read "one line". This alteration makes the agreement emphatic at least on one point: only one line is authorized. I feel it is clear, also, because "or" as used in "poles, frames or towers" is disjunctive, the agreement means that the grant was for either one of three servitudes: a servitude to transmit electricity with poles; a servitude to transmit electricity with frames or a servitude to transmit electricity with towers. This language gave Gulf States the option of erecting one of three different kinds of facilities for transmitting electricity. This option was exercised shortly after the agreement was signed when Gulf States selected "poles", thereby accepting delivery of the servitude for the transmission of electricity by poles in accordance with Article 743 of the Civil Code which provides:
"Servitudes are established by all acts by which property can be transferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery." See also La.Civil Code arts. 769 and 804.
By failing to use either "frames" or "towers" during ten years, the other two servitudes created by the agreement expired. La.Civil Code art. 789.
These conclusions are in keeping with the rights of owners to establish servitudes as they deem proper, defining their nature and limiting their enjoyment by the title by which they are created. La.Civil Code arts. 709, 751. The limitations which I recognize to be imposed on the servitudes created by the grant in question are therefore entirely compatible with the concept of servitudes in our Code. While the servitudes were for the transmission of electricity in one of three different ways only one could be exercised at a time, for the agreement permits only "one line".
Although a line is delineated across the grantor's property along which the poles, frames or towers could be constructed, there is no width specified for the servitude. Under an absurd but literal interpretation of the agreement, are we to believe that the landowner conveyed the right to erect frames or towers of unlimited width across his 704 acres for $575? It is likewise unrealistic to assume from the vague and indefinite terms of the contested agreement that the parties understood that Gulf States could elect one of the three methods permitted by the agreement, and later, after the lapse of more than ten years, when the property had increased in *254 value almost tenfold, abandon its first choice and erect an entirely new and totally different type installation, taking an additional 20 feet of property and adding 138,000 volts to the installation thereby increasing the hazard and danger involved in the owner's use of the property. Yet this is the result the majority opinion sanctions. Conceivably, under the stipulation, Gulf States may have had the right to convert from poles to "H-Frames" during the ten year period following the grant, but under no theory could it change from poles to "H-Frames" after the ten years for the right to erect "H-Frames" had been lost by ten years nonusage. La.Civil Code art. 804.
The blatant indefiniteness of the agreement, the lack of even a minimum restriction on the width of the property Gulf States could use under the agreement, and the lack of any provision for additional consideration for such factors as increment in land value when establishing the price to be paid for new areas taken, leaves the inherent fairness of such an agreement questionable at best. Note, 27 La.Law Rev. 634 (1967).
One salient and controlling principle has been brushed aside by the majority in reaching a decision in this case. It is the principle established in Article 753 of the Civil Code that "Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected." Applied to the facts of this case, this codal article makes the result reached by the majority patently erroneous. Nowhere has the landowner been given the benefit of any doubt created by several ambiguities. To the contrary, the majority has arrived at a result without a thorough analysis of the agreement or the law applicable to the case, all in utter disregard of far-reaching and serious consequences of this unfortunate decision.
Time and progress have compelled Gulf States to enlarge and expand its facilities to an extent far beyond the original contemplation of the agreement in question. Although it once had the right to erect "H-Frames", that right has been lost by nonusage. If Gulf States would utilize plaintiffs' property in its expansion program let it pay for it.
I respectfully dissent.
NOTES
[1] Many provocative arguments and issues, some of which are not even raised by argument, are removed from consideration by this stipulation. For example, plaintiffs raise in argument the question whether the grant of servitude contains a description of the area or breadth of land subject to the servitude. However, since it is stipulated that the grant permitted the construction, at the inception of the servitude and for 10 years thereafter, of the H-frame structures now complained of, it must follow that there was sufficient description of breadth to encompass this construction. The issue of whether the H-frame construction is a more onerous or burdensome use of the servient estate is also made moot by the stipulation. Interesting but not under consideration is the import of the striking out of the words "or more" and of the "s" on the word "lines" to make the singular word "line".
[2] Article 798 provides: "If, on the contrary, the owner has enjoyed a right less extensive than is given him by his title, the servitude, whatever be its nature, is reduced to that which is preserved by possession during the time necessary to establish prescription."
[3] Article 789 reads: "A right to servitude is extinguished by the non-usage of the same during ten years."

Article 796 states:
"The mode of servitude is subject to prescription as well as the servitude itself, and in the same manner.
"By mode of servitude, in this case, is understood the manner of using the servitude as is prescribed in the title."
[4] Servitude means a charge or burden resting upon an estate for the benefit or advantage of another, and the land of the servient estate serves another estate or person. Black's Law Dictionary (DeLuxe ed. 1944). In the civil law, servitude is "* * * a right which subjects a land or tenement to some service, for the use of another land or tenement, which belongs to another master * * *." 1 Domat, The Civil Law in Its Natural Order § 1018 (Strahan tr. 1861). "The charge established upon one of the estates should benefit the other. Servitudes were devised to add to the utility of certain properties.

"* * *
"The Italian Code (Art. 531) uses the same language as the French Code [Art. 637]. It says: `per l'uso e l'utilità di un fondo.' The Spanish Code (Art. 530) states, in general terms, that the servitude is established upon an immovable in favor (en beneficio) of another. The German Code says that the predial servitude can consist only in a charge that presents an element of utility for the use of the dominant estate (Art. 1019)." 1 Pt. 2 Planiol, Treatise on the Civil Law (Louisiana State Law Inst. tr. 1959) § 2884, pp. 698-699.
Louisiana Civil Code Article 647 provides: "A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner." (Emphasis supplied.)
[5] The title also was granted "for telephone and telegraph use".
[6] Both plaintiffs and defendant agree that "poles, frames or towers" are not modes of use. The plaintiffs say at p. 10 of their brief: "* * * Those we submit are not modes or methods of use. They are different servitudes * * *." In defendant's brief it is stated at p. 14: "* * * And hence we say that it was erroneous for the appellate court to conclude, as it did, that the electric line servitude had different modes of use merely because different types of supporting structures (differing in detail only) could have been used."