*955 SUMMERS, Justice
(dissenting).
Nelson Hanks and others, doing business as Hanks Company, filed this suit for damages which are alleged to have resulted from a trespass on their property by Gulf States Utilities Company.
Plaintiffs own the property on which their predecessor in title Delma Hanks granted a servitude to Gulf States Utilities Company on January 23, 1949. In consideration of $575 Hanks granted.
“ * * * the right, privilege and servitude to enter upon and to erect, construct, extend, maintain, inspect, operate, replace, remove, repair, and patrol one et saoee lines of poles, frames or towers, which may be erected simultaneously or at some future time, with lines of wires, cross-arms, guy wires, conduits, stubs, and other usual fixtures, appliances, and appurtenances used or adapted for the transmission of electricity, electric energy and power for any and all purposes for which electricity, electric energy and power is now or may hereafter be used, and for telephone and telegraph use, together with all necessary foundations, anchors and braces properly to support the same upon, over and across a strip of land out of the following described tract: (here follows a description of the 704.56 acre tract belonging to plaintiffs). * * * which strip of land upon which said servitude is granted is on each side of a center line particularly described as follows: (here follow the courses and distances of a line across the 704.56 acre tract of plaintiffs).
The agreement also provides the right to keep all trees and underbrush cut within fifty feet of the line and prohibits the erection of any structures within fifty feet of the line established in the agreement.
Soon thereafter, in 1949, Gulf States constructed an electric transmission facility along the line described in the agreement, consisting of a single row of poles 300 feet apart, each with an attached cross-arm, wires and the usual fixtures for the transmission of electricity. When completed, this installation carried one 69,000 volt circuit of electricity. The installation was maintained and in use until 1962.
Between January and May 1962 Gulf States removed the single pole line and thereafter constructed a new facility called an “H-Frame Line”, consisting of a row of “H-Frame” double poles with attached cross-arms, wires and other usual fixtures, appliances and appurtenances used for the transmission of electricity, electric energy and power. The “H-Frame” double pole structures were located approximately 450 feet apart. One of the double poles of each such “H-Frame” structure was located on the center line described in the servitude grant, and the other pole of each *957 such “H-Frame” structure was located 20 feet west of, and at right angles to, the line established in the servitude grant. The “H-Frame” line thus constructed now carries the 69,000 volt circuit formerly-carried by the single pole installation, plus an additional 138,000 volt circuit.
The question presented is whether the right to erect, construct, maintain and operate the “H-Frame” line has been lost by the liberative prescription of ten years. It is stipulated that, if that right has prescribed, plaintiffs are entitled to recover $5,000 as damages for the construction, operation and maintenance of the “H-Frame” line. On the other hand, if the right has not prescribed, plaintiffs can recover nothing.
The agreement, in my view, is vague, indefinite and confusing. It is prepared on a printed form furnished by Gulf States, and for that reason any ambiguity or uncertainty should be construed against Gulf States, the party who prepared the contract. La.Civil Code arts. 1957 and 1958; Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966).
The printed form provided for the erection of “one or more lines”; however, this was altered to ’read “one line”. This alteration makes the agreement emphatic at least on one point: only one line is authorized. I feel it is clear, also, because “or” as used in “poles, frames or towers” is disjunctive, the agreement means that the grant was for either one of three servitudes : a servitude to transmit electricity with poles; a servitude to transmit electricity with frames or a servitude to transmit electricity with towers. This language gave Gulf States the option of erecting one of three different kinds of facilities for transmitting electricity. This option was exercised shortly after the agreement was signed when Gulf States selected “poles”, thereby accepting delivery of the servitude for the transmission of electricity by poles in accordance with Article 743 of the Civil Code which provides:
“Servitudes are established by all acts by which property can be transferred, and as they are not susceptible of real delivery, the use which the owner of the estate to whom the servitude is granted, makes of this right, supplies the place of delivery.” See also La.Civil Code arts. 769 and 804.
By failing to use either “frames” or “towers” during ten years, the other two servitudes created by the agreement expired. La.Civil Code art. 789.
These conclusions are in keeping with the rights of owners to establish servitudes as they deem proper, defining their nature and limiting their enjoyment by the title by which they are created. La.Civil Code arts. 709, 751. The limitations which I recognize to be imposed on the servitudes created by the grant in question are therefore entirely compatible with the concept *959 of servitudes in our Code. While the servitudes were for the transmission ■ of electricity in one of three different ways only one could be exercised at a time, for the agreement permits only “one line”.
Although a line is delineated across the grantor’s property along which the poles, frames or towers could be constructed, there is no width specified for the servitude. Under an absurd but literal interpretation of the agreement, are we to believe that the landowner conveyed the right to erect frames or towers of unlimited width across his 704 acres for $575 ? It is likewise unrealistic to assume from the vague and indefinite terms of the contested agreement that the parties understood that Gulf States could elect one of the three methods permitted by the agreement, and later, after the lapse of more than ten years, when the property had increased in value almost tenfold, abandon its first choice and erect an entirely new and totally different type installation, taking an additional 20 feet of property and adding 138,000 volts to the installation thereby increasing the hazard and danger involved in the owner’s use of the property. Yet this is the result the majority opinion sanctions. Conceivably, under the stipulation, Gulf States may have had the right to convert from poles to “H-Frames” during the ten year period following the grant, but under no theory could it change from poles to “H-Frames” after the ten years for the •right to erect “H-Frames” had been lost by ten years nonusage. La.Civil Code art. 804. .
The blatant indefiniteness of the agreement, the lack of even a minimum restriction on the width of the property Gulf States could use under the agreement, and the lack of any provision for additional consideration for such factors as increment in land value when establishing the price to be paid for new areas taken, leaves the inherent fairness of such an agreement questionable at best. Note, 27 La.Law Rev. 634 (1967).
One salient and controlling principle has been brushed aside by the majority in reaching a decision in this case. It is the principle established in Article 753 of the Civil Code that “Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected.” Applied to the facts of this case, this codal article makes the result reached by the majority patently erroneous. Nowhere has the landowner been given the benefit of any doubt created by several ambiguities. To the contrary, the majority has arrived at a result without a thorough analysis of the agreement or the law applicable to the case, all in utter disregard of far-reaching and serious consequences of this unfortunate decision.
*961 Time and progress have compelled Gulf States to enlarge and expand its facilities to an extent far beyond the original contemplation of the agreement in question. Although it once had the right to erect “H-Frames”, that right has been lost by nonusage. If Gulf States would utilize plaintiffs’ property in its expansion program let it pay for it.
I respectfully dissent.