STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-139


ANGELINA WILLIAMS

VERSUS

DOLGENCORP, INC.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-16272
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**ELIZABETH A. PICKETT**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

**Edward F. Harold**
**Nicole M. Gonzales**
**Fisher & Phillips, LLP**
**201 St. Charles Ave., Ste. 3710**
**New Orleans, LA  70170**
**(504) 522-3303**
**Counsel for Defendant/Appellant:**
        **Dolgencorp, Inc.**

**J. Bryan Jones, III**
**Jones Law Firm**
**P. O. Box 1550**
**Cameron, LA  70631**
**(337) 775-5714**
**Counsel for Plaintiff/Appellee:**
        **Angelina Williams**

**PICKETT, J.**

<u>FACTS</u>

Angelina Williams was the general manager of the Dollar General in Cameron, Louisiana. As general manager, she was required to stock shelves, unload inventory off of delivery trucks, and run the cash registers. In 1997, Ms. Williams sustained a back injury while in the course and scope of her employment. She was placed on light-duty. Dollar General modified her job requirements so that she was able to continue to work. Ms. Williams continued to lift heavy objects while at work, although she was restricted to light-duty and she continued to experience back pain. While performing inventory at another store, Ms. Williams' back went out again. At that time, Ms. Williams' injury came to Risk Management's attention. She was told she would have to cease working and begin drawing workman's compensation. On November 23, 2001, Ms. Williams' employment was terminated.

During her employment, Ms. Williams participated in Dollar General's Teamshare Bonus Program (Teamshare). Teamshare is an incentive program offered to Dollar General's employees that encourages high performance and longevity while rewarding employees, in the form of a bonus, for their role in meeting company goals. In order to be eligible for the program, the store manager, assistant managers, and store clerks had to meet all of the following conditions: (1) be actively employed on March 15, 2002, (2) be a regular or full-time or part-time employee as of January 31, 2002, and (3) "meet standards" 1.75 or higher rating on year-end. It is specifically set forth in the terms of the program that "bonuses earned by any employee who is NOT employed on March 15, 2002, will be forfeited and a bonus will not be paid to that employee." The Teamshare bonus is paid after the fiscal year-end net profits have been determined. The fiscal year ends in January, and the bonus is typically

paid in early April.

Because Ms. Williams' employment was terminated prior to the conclusion of the fiscal year, she was not paid a bonus for that year. The Dollar General stores in Louisiana are owned and operated by Dolgencorp, Inc. On April 2, 2002, Ms. Williams wrote a demand letter to Cal Turner, Jr., the chairman of Dolgencorp, seeking his assistance in getting her bonus. Ms. Williams' demand was not fulfilled. She filed suit against Dolgencorp claiming she was entitled to payment of the annual bonus and attorney fees pursuant to the Wage Payment Law, La.R.S. 23:631.

A trial on the merits was held on May 28, 2003. On August 22, 2003, the trial court issued an opinion in this matter ruling in favor of the plaintiff and awarding damages in the amount of $9,764.47. It is from this judgment the defendant appeals.

## ASSIGNMENTS OF ERROR

Dolgencorp sets forth five assignments of error:

1)  The trial court erred when it concluded that Plaintiff was due a pro-rata share of the bonus despite the fact she did not qualify for or earn the bonus under the clear terms of the program.

2)  The trial court erred in relying upon the reason for termination as a factor in determining whether Plaintiff was owed the bonus. The Supreme Court has clearly held that the determination of what an employee is owed cannot depend upon the underlying reason for the employee's termination.

3)  The trial court erred when it concluded that Plaintiff was capable of working the entire bonus period in light of her testimony that she was physically incapable of performing her duties as a store manager.

4)  The trial court erred in concluding that the absence of an express statement regarding what would happen to the bonus in the event of an involuntary termination was relevant because the plan terms clearly set out what an employee has to do to qualify for and earn the bonus.

2

5) The trial court erred in concluding the wage forfeiture statute limits the right of an employer to terminate an at will employee for any reason if the result of the termination prevents the employee from earning a bonus.

## DISCUSSION

Teamshare is an incentive program offered to Dollar General employees that encourages high performance and longevity while rewarding employees an annual bonus for their role in meeting company goals. In order to be eligible for the Teamshare bonus, the company required the following conditions be met:

1) The employee must be actively employed on March 5, 2002.

2) The employee must be a regular full-time or part-time employee as of January 21, 2002, the last day of the company's fiscal year.

3) The employee must "Meet Standards" with 1.75 or higher rating on year-end performance review.

The Teamshare bonus is calculated as a percentage of the store's fiscal year-end net profit. A method of pro-rating the bonus is set forth in the company's policy for employees who transfer from one store to another or for employees on "leave" for a portion of the fiscal year. The policy also provides that "Bonuses earned by any employee who is NOT employed on March 15, 2002 will be forfeited and a bonus will not be paid to that employee . . . Any employee terminated <u>after</u> March 15, 2002, for gross misconduct (theft, working off the clock, etc.) will NOT be paid a bonus." There is no provision, however, in the company policy regarding employees who are involuntarily terminated and who have not been guilty of misconduct.

In its written opinion, the trial court set forth as follows:

> Defendant designed and instituted the bonus plan at issue. Defendant willingly chose not to address the issue of involuntary termination in its plan. Had plaintiff worked for the entire bonus period, as she desired to do and was capable of doing, the terms of the employment contract would have obligated her employer to pay her a

3

bonus. The bonus was thereafter part of plaintiff's bargained for compensation for services rendered and the public policy of this state, as expressed in R.S. 23:634, prohibits an employer from forfeiting such compensation by discharging an employee before the contract is completed.

This decision is an outgrowth of the Louisiana Supreme Court decision in *Morse v. J. Ray McDermott & Co.*, 344 So.2d 1353 (La. 1976), which was based both on the public policy of the state as expressed in R.S. 23:634, and on the fact that the employer prevented fulfillment of the condition of continued employment for reasons not attributable to the employee's misconduct. It is therefore the opinion of this court that the requirement of continued employment throughout the bonus period with no remedy for an involuntary termination that was not based on the employee's misconduct is unenforceable as against public policy and plaintiff is therefore entitled to collect a proportionate sum based on the amount of the bonus which had accrued at the time of her termination.

In the instant case, the appellee worked ten months of the 2001 fiscal year. Her employment was terminated by the employer November 23, 2001. The record is clear that the appellee wanted to continue working. The appellee testified that when she met with the district manager, Freeman Bertrand, she was told that she could not continue working permanently on light-duty status but the termination of her employment would not affect her bonus. There was no testimony or evidence presented by Dolgencorp to contradict this testimony. The appellee's testimony further indicated that she was able to continue her employment at light duty status and desired to do so. This testimony is also uncontradicted.

The threshold issue is whether an annual bonus is a "wage" or "an amount then due under the terms of employment" under La.R.S. 23:631(A)(1)(a). That statute provides:

Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days

4

following the date of discharge, whichever occurs first.

For the purposes of La.R.S. 23:631, wages are any amounts due under the terms of employment, which are earned during a pay period. *Tran v. Petroleum Helicopters*, 00-0051 (La.App. 3 Cir. 6/28/00), 771 So.2d 673, *writ denied*, 00-2886 (La. 12/8/00), 776 So.2d 463.

In *Winkle v. Advance Products & Systems, Inc.*, 98-694 (La.App. 3 Cir. 10/28/98); 721 So.2d 983, this court recognized that an unwritten forfeiture policy is illegal. "[W]hen an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit . . . ." *Baudoin v. Vermilion Parish School Bd.*, 96-1604, p.5 (La.App. 3 Cir. 4/2/97), 692 So.2d 1316, 1319 (quoting *Kneckt v. Board of Trustees for State Colleges and Universities and Northwestern State Univ.*, 591 So.2d 690 (La.1991)), *writ denied,* 97-1169 (La. 6/20/97), 695 So.2d 1358.

Dolgencorp argues the trial court erred in finding that the appellee desired to continue working and was capable of doing so. The uncontradicted evidence in the record supports that finding and it will not be disturbed. We find no manifest error in the trial court's factual findings.

We further find no error in the trial court's consideration of the reason for termination in determining whether the appellee was entitled to the bonus. Under the terms of the Teamshare program, the appellee would have forfeited all rights to the bonus if she had been discharged for gross misconduct. She was not. The Teamshare plan clearly sets forth the consequences for being terminated for misconduct. It sets forth the policy for employees who voluntarily leave and are re-hired. It sets forth the

5

policy for those employees who are transferred or promoted. It is silent on the issue of whether the bonus is affected when an individual is terminated against her will but not for misconduct. It is necessary, therefore, to determine how the employment was terminated in order to reach the next level of inquiry; that is, how the termination affects the right to receive the bonus.

The Teamshare plan specifically sets forth that "Employees on 'leave' are eligible for a pro-rated bonus based on the number of months worked during the fiscal year (provided) employment has not terminated before March 15, 2002." The plan does not define "leave." Apparently, therefore, there are situations where employees who do not work the entire year participate in the profit sharing.

In the matter before us, we have an additional factor to consider. The district manager, who was acting in his official capacity on behalf of the corporation, specifically told the appellee that her bonus would not be affected by her termination for medical reasons according to the uncontroverted testimony.

After reviewing the evidence as a whole, we conclude there was no error in either the trial court's findings of fact or it's application of the law. We conclude the bonus to which the appellee is entitled is considered "wages" due under the terms of her employment. We further conclude that the only requirement she failed to meet in order to be entitled to receive that bonus was the requirement that she be employed on January 31, 2002, the last day of the fiscal year. She was willing to meet that requirement and failed to do so strictly by the actions of the employer who represented, none the less, that her bonus would not be affected. We find the appellee is entitled to the pro-rata share of the bonus awarded by the trial court. The trial court specifically stated that "[T]he requirement of continued employment throughout the

6

bonus period with no remedy for an involuntary termination that was not based on the employee's misconduct is unenforceable as against public policy . . . ."

We agree. To hold otherwise would encourage employers to terminate employees who have worked toward promised compensation just before they are to receive it, thus benefitting from, but not being required to compensate those deserving employees. We, therefore, affirm the trial court's ruling as it pertains to the pro-rata share of the bonus due the appellee.

In her brief, the appellee argues that the trial court erred by failing to award attorney fees and requests attorney fees on appeal. In order for this court to consider this issue, the appellee is required to file an Answer setting forth these requests. As she failed to do so, we cannot consider this issue.

**AFFIRMED.**