42 So.3d 346 (2010)
Mark H. FOSHEE
v.
GEORGIA GULF CHEMICALS & VINYLS, L.L.C.
No. 2009-C-2477.
Supreme Court of Louisiana.
July 6, 2010.
Marvin E. Owen, Baton Rouge, for Applicant.
Breazeale, Sachse & Wilson, LLP, Yvonne Reed Olinde, Murphy James Foster, III, Baton Rouge, for Respondent.
PER CURIAM.[*]
Plaintiff, Mark H. Foshee, filed suit against Georgia Gulf Chemical & Vinyls, L.L.C. ("Georgia Gulf") seeking to recover certain profit-sharing distributions, as well as penalties and attorney fees. The district court rendered partial summary judgment in favor of Georgia Gulf on the issue of penalties and attorney fees, and the matter proceeded to trial on the merits. At the conclusion of trial, the district court awarded plaintiff $17,263.35 in profit sharing, with legal interest from date of demand. On appeal, the court of appeal affirmed the district court's judgment granting partial summary judgment in favor of Georgia Gulf on the issue of penalties and attorney fees, but reversed the district court's judgment awarding plaintiff $17,263.35 in profit sharing. Foshee v. Georgia Gulf Chemicals and Vinyls, L.L.C., 09-0530 (La.App. 1 Cir. 10/21/09), 24 So.3d 1029. Upon plaintiff's application, we granted certiorari to consider this ruling. Foshee v. Georgia Gulf Chemicals and Vinyls, L.L.C., 09-2477 (La.2/26/10), 28 So.3d 263.
After hearing oral arguments and reviewing the record, we conclude there is no error in the judgment of the court of appeal. Accordingly, we affirm that judgment.
KNOLL, J., dissents and assigns reasons.
WEIMER, J., dissents.
CIACCIO, Justice ad hoc, dissents for the reasons assigned by KNOLL, J.
KNOLL, J., dissenting.
I respectfully dissent. Plaintiff Mark Foshee met all stated requirements to participate in Georgia Gulf's 2004 profit sharing plan, and Georgia Gulf's decision to fire him in 2005 does not give it license to retroactively take away a bonus he had already earned. Moreover, the court of appeal opinion and our recall of the writ do not give proper deference to the credibility and factual findings of the trial court, which found Foshee's performance as a Georgia Gulf employee acceptable. I would therefore reverse the appellate court ruling and enter judgment for plaintiff.

A. Foshee's Entitlement to Participate in the 2004 Profit Sharing Plan
The basic requirements for participating in the Georgia Gulf profit sharing plan were set forth in a three-page Georgia Gulf brochure and a letter to Foshee dated May 7, 2004. These documents set forth the three basic requirements for earning a share of the profit plan: (1) the employee *347 must earn a certain number of "points" based on his job function and/or salary level; (2) the company must meet its "profit target" for 2004; and (3) the employee must remain employed through December 31, 2004. The parties agree each of these three conditions was met. The parties disagree whether Georgia Gulf was entitled to reduce or eliminate Foshee's bonus payment due to his alleged poor performance.
Georgia Gulf introduced a document titled "Profit Sharing Program Description and Administrative Process," which it claims gives its managers permission to reduce a bonus payout based on performance. This document makes no part of the official bonus plan documents and is irrelevant. It is undisputed that this document was not disseminated to Georgia Gulf non-managerial employees, and Foshee was never given a copy of the document. Georgia Gulf cannot provide its employees with one set of plan documents, then secretly disseminate a separate, more restrictive set of rules which it does not provide to its employees.
Moreover, when asked during discovery to produce a "full and complete copy of the Ga Gulf Employee Profit Sharing Plan," Georgia Gulf did not provide a copy of the "Profit Sharing Program Description and Administrative Process." This admits this document made no part of the profit sharing plan governing documents.
I have carefully reviewed both the May 7, 2004 letter and the profit sharing plan brochure. Neither document permits Georgia Gulf to unilaterally reduce an employee's bonus award based on individual poor performance. Highly significantly, the May 7, 2004 letter tells Foshee "[y]ou have been awarded a total of 10,215 Profit Sharing points for 2004." (Emphasis added). The letter does not say that Foshee "may" be awarded a certain number of points, contingent on his manager's belief that he performed his job adequately. This is confirmed by the brochure, which states that an employee's "[t]otal points are determined by your job function and salary level," not based on his performance at work.
The May 7, 2004 letter also states to be "eligible for a payment, you must remain an employee through December 31, 2004." Foshee continued working for Georgia Gulf past this deadline.
The Court of Appeal Opinion relies on a passage of the Georgia Gulf brochure stating the profit sharing plan "motivates employees by creating the potential for increased compensation tied directly to company operating results and individual performance." Foshee v. Georgia Gulf Chemicals & Vinyls, LLC, 09-530 (La. App. 1 Cir. 10/21/09), 24 So.2d 1029.[1] The opinion also refers to that part of the May 7, 2004 letter stating the "program provides the potential for you to earn additional cash compensation for your efforts." The court of appeal opinion suggests these phrases should have placed Foshee on notice that his participation in the plan was contingent on his individual performance.
I disagree. The quoted passages do fairly put Foshee on notice that his bonus is not guaranteed, as the plan is expressly contingent on Georgia Gulf's success as a company: "[b]ecause profit sharing payments are based on corporate profitability, there's no guarantee that you will receive a share every yearonly in years that Georgia Gulf reaches a specified profit level."[2] *348 However, nothing in these statements put Foshee on notice that his points may unilaterally be reduced by Georgia Gulf management in 2005, after he has completed all the requirements to be eligible for the bonus.
The plan documents must be strictly construed against Georgia Gulf, the party who drafted them. Civ.Code arts. 2056-57; U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., 79 F.3d 393, 400 (5th Cir.1996)("Under Louisiana law, ambiguous clauses are construed against the drafter"); Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210, 213 (1966)(Any "ambiguity or contradiction which existed in the language of the contract must be construed against the party who prepared the contract.") If the ambiguity "arises from lack of a necessary explanation that one party should have given... the contract must be interpreted in a manner favorable to the other party." Civ.Code art. 2057.
The court of appeal ignores these well-settled rules of construction by liberally construing the plan documents in favor of Georgia Gulf. It puts the onus on Foshee to draw an inference from what are, at best, ambiguous and tangential references to his individual job performance. If Georgia Gulf wished to make profit sharing payments contingent on the employee meeting certain performance standards, it could have unambiguously stated that requirement in the plan documents.[3] However, Georgia Gulf never explicitly told its employees there were individual performance requirements, and it should not be permitted to retroactively alter the stated terms of the profit sharing plan. Because Georgia Gulf did not provide the "necessary explanation" regarding individual performance, the plan must be generously interpreted in favor of plaintiff.
Georgia Gulf did have an available remedy for Foshee's alleged incompetence. As an at will employee, he could have been fired at any time. If Georgia Gulf had fired him for poor performance prior to December 31, 2004, he would not have been entitled to a bonus under the plan documents. But Georgia Gulf did not fire him in 2004, at the time of his alleged poor performance; it waited until March 2005 to do so. Georgia Gulf cannot punish Foshee for his 2005 termination by requiring him to forfeit monies he earned during 2004.
Moreover, this is directly contrary to Louisiana's unpaid wages act, which does not permit an employer to require an employee to forfeit unpaid wages for any reason, even alleged incompetence. "Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment." La. Rev.Stat. § 23:631. "No person ... shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed ... but in all such cases the employees shall be entitled to the *349 wages actually earned up to the time of their discharge or resignation." La.Rev. Stat. § 23:634. See Pender v. Power Structures, Inc., 359 So.2d 1321 (La.App. 4 Cir.1978)(Lemmon, J.) (Although employees' actions in "undermining employer" justified termination, the employer was not justified in requiring them to forfeit their already-earned bonus); Draughn v. Breaux Mart, 411 So.2d 1188 (La.App. 4 Cir.1982), writ denied 415 So.2d 944 (La.1982)(Employee entitled to recover value of already-earned accrued vacation benefits even where he was fired for "poor performance.")

B. The Appellate Court Erred in Overturning The Trial Court's Credibility Determination That Foshee Performed Acceptably
Even assuming Foshee's performance as an employee was a relevant factor to his bonus payments, Foshee would still be entitled to the bonus payment. After a full trial on the merits the district court found, as a matter of fact, Foshee had performed adequately enough in 2004 to earn his bonus. The trial court noted that, far from being fired in 2004, Foshee received a 3% raise in November 2004, just prior to his termination, and awarded him the full amount of his requested bonus.[4]
The appeals court reversed and granted summary judgment for Georgia Gulf. The appeals court surprisingly found there was "no real conflict" in the testimony because "[a]ll of the Georgia Gulf witnesses testified that there were problems with Mr. Foshee's work." Foshee v. Georgia Gulf Chemicals & Vinyls, LLC, 09-0530, p. 14 (La.App. 1 Cir. 10/21/09), 24 So.3d 1029.
There is a clear conflict between the testimony of Georgia Gulf employees and the testimony of Foshee himself, who testified "that his work performance was satisfactory." Id. at * 14-15. The trial court's decision to favor Foshee's testimony over Georgia Gulf's testimony is a classic credibility call left to the discretion of the trial judge, who ruled in favor of Foshee. A trial court's ruling on a witness's credibility is entitled to "great deference" and will not be overturned "unless there is no evidence to support those findings." State v. Hunt, 09-1589 (La.12/1/09) 25 So.3d 746, 751. The appellate court erred in substituting its own credibility judgment for that of the trial court.

C. Louisiana's Unpaid Wages Statutes
Louisiana law provides a clearly stated statutory public policy against the forfeiture of wages:
No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

La.Rev.Stat. § 23:634 (emphasis added).
Foshee "actually earned" his bonus payment on December 31, 2004. He was not notified of his pending termination until January 2005, and he was not terminated until March 2005. The bonus payments were earned prior to his discharge, and La.Rev.Stat. § 23:634 sets forth a clear legislative intent that such payments cannot be forfeited or rescinded for any reason. Although an employer is free to terminate *350 his employees at any time, he may not retroactively take away their wages for any reason. Wages and bonuses, once earned, are the property of the employee, not the employer.
Georgia Gulf argues the bonus payment is not "wages actually earned" at the time of Foshee's termination because it is contingent and therefore uncertain. I disagree. This Court has held the accrued benefits of a employee profit sharing plan are "earned incomeproperty within legal contemplation." T.L. James & Co. v. Montgomery, 332 So.2d 834, 841 (La.1976). We recognized a profit sharing plan is not, as Georgia Gulf claims, a wholly gratuitous endeavor:
Only the employer contributes to the plans, but the contribution is not without reciprocal contribution on the part of the employee, although these are intangible and difficult to evaluate. It is a reward by the company to promote loyal and efficient service on the part of the employee. The plans are, moreover, an inducement to employees to remain in the service of the company to enjoy the benefits the plans promised. In short, the contribution of the employer is not a purely gratuitous act, but it is in the nature of additional remuneration to the employee who meets the conditions of the plan. The employer expects and receives something in return for his contribution, while the employee, in complying, earns the reward. The benefits to the employee are, therefore, earned incomeproperty within legal contemplation.
Id. at 841 (Emphasis added, citations omitted).
Similarly, in Knecht v. Board of Trustees for State Colleges and Universities, 591 So.2d 690 (La.1991), we unanimously held that an employee has a "vested right" to an employment benefit when he meets the requirements set forth in the plan documents. Importantly, "nearly every state has determined, using precepts similar to our civilian principles, that when an employer promises a benefit to employees, and employees accept by their actions in meeting the conditions, the result is not a mere gratuity or illusory promise but a vested right in the employee to the promised benefit." Id. at 695 (collecting cases). Foshee reasonably relied upon the statements made in the plan documents as an inducement to remain with Georgia Gulf. "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." Civ. Code art. 1967.
In Pender v. Power Structures, Inc., 359 So.2d 1321 (La.App. 4 Cir.1978) (Lemmon, J.), the employer paid quarterly bonuses based on a profit sharing plan. It was defendant's policy that employees had to continue to work for at least 30 additional days after the end of the quarter to receive a payment. Plaintiffs were fired the day after the quarter ended, and were not paid their bonuses. Id. at 1322. The court held this policy violated the non-forfeiture provisions of La.Rev.Stat. § 23:634, and entered judgment for plaintiffs because "the bonus was part of the employee's bargained-for compensation for services rendered during this period." Id. at 1322-23. Moreover, the "public policy of this state expressed in R.S. 23:634 prohibits an employer from forfeiting such compensation when the employee works for the entire period of profits upon which the bonus was based, but does not work for the required additional 30 days." Id. at 1323. In Pender, as in the present case, the plaintiff employees were terminated for "misconduct." Id. at 1323. However, the Pender court held that alleged misconduct *351 alone did not allow the employer to violate the public policy set forth in § 23:634, and "plaintiffs are accordingly entitled to collect the bonuses which constituted part of the compensation promised to them for services performed during the bonus period." Id. at 1323.
Here, Georgia Gulf presented Foshee with an uncomplicated deal: if he continued to work for Georgia Gulf through December 31, 2004, and the company reached a certain profit level, he would earn a bonus. This is "an inducement to employees to remain in the service of the company" through the end of the year. T.L. James & Co. v. Montgomery, 332 So.2d 834, 841 (La.1976). Foshee upheld his end of the bargain; Georgia Gulf did not. I would reinstate the judgment of the trial court as to the unpaid wage claim.

D. Foshee's Entitlement To Penalties and Attorneys' Fees
Foshee also seeks recovery of attorneys' fees and penalties under La.Rev.Stat. § 23:631 et seq. The relevant portion of § 23:631 states:
Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
La.Rev.Stat. § 23:632 mandates an award of penalties and attorneys' fees against employers who violate § 23:631:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
The money Foshee was owed under the profit sharing plan is an amount "due under the terms of employment" under La.Rev.Stat. § 23:631. An employee becomes eligible for the payment by earning a number of points according to the Georgia Gulf system and by continuing to work for Georgia Gulf through December 31, 2004. Under the plain meaning of the phrase, Georgia Gulf's profit sharing bonuses are earned "under the terms of employment" with the company.
This holding is well-supported by the jurisprudence, as several cases broadly define unpaid wages under § 23:631 to include bonus payments, including discretionary bonuses and profit sharing plans. Penalties and attorneys' fees have been awarded to plaintiffs seeking payment of annual bonuses,[5] monthly bonuses,[6] and *352 bonuses explicitly based on meeting stated performance goals.[7]
Because La.Rev.Stat. § 23:632 states that an employer who fails to timely pay unpaid wages "shall be liable" for penalties and attorneys' fees, an award of penalties and fees is not permissive but mandatory. La.Rev.Stat. § 1:3. I would therefore award Foshee his bonus under the profit sharing plan in the amount of $17,263.35; as well as statutory penalties and reasonable attorneys' fees to be determined by the district court on remand.
NOTES
[*] Retired Judge Phillip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
[1] The Court of Appeal opinion is not designated for publication in the official reports. It may be accessed at 2009 La.App. Unpub. LEXIS 596 and 2009 WL 6316254.
[2] It is undisputed that Georgia Gulf exceeded its specified profit level during 2004.
[3] Compare to Huddleston v. Dillard Dept. Stores, Inc., 94-53 (La.App. 5 Cir. 5/31/94), 638 So.2d 383, where Dillard's employee handbook stated employees "involuntarily terminated for cause are not eligible for vacation pay." Id. at 384 (emphasis in original). The documents also stated that any dishonesty would be grounds for involuntary termination. The court held this "provision is clear in putting employees on notice that dishonesty in any form would be grounds for discharge" and loss of benefits. Id. at 385. Georgia Gulf's employee documents contained no such clear statement that poor performance would be grounds for forfeiting the bonus payments.
[4] Georgia Gulf counters that its other employees received a 3.7% raise. The trial court apparently found the small difference between Foshee's 3.0% raise and the 3.7% raise given to other employees was irrelevant. I agree.
[5] Williams v. Dolgencorp, Inc., 04-139 (La. App. 3 Cir. 9/29/04) 888 So.2d 260, 264-65, writ denied, 05-0174 (La.3/24/05) 896 So.2d 1042.
[6] Cochran v. American Advantage Mortgage Co., Inc., 93-1480 (La.App. 1 Cir. 6/24/94), 638 So.2d 1235, 1238-39.
[7] Thomas v. Orleans Private Industry Council, 95-1577 (La.App. 4 Cir. 2/15/96) 669 So.2d 1275, writ denied, 96-0686 (La.4/26/96) 672 So.2d 671.