WHIPPLE, Judge.
This case is before us on appeal from a judgment of the trial court, which affirmed an administrative law judge’s order declaring appellants unsuitable for involvement in charitable gaming, and prohibiting appellants’ involvement in any charitable game of chance. For the following reasons, we affirm.
PROCEDURAL HISTORY
In January of 1991, the State of Louisiana, Office of State Police, Division of Charitable Gaming Control, Gaming Enforcement Section (hereinafter referred to as the Division), initiated proceedings by written notice to appellants, Russell J. Devillier (Russell), Lucy F. Devillier (Lucy), Allen Paul Devillier (Allen), Pete Ray Devillier (Pete), R & L Catering, Inc. (R & L), and PAP, Inc. (PAP), for disciplinary action to have appellants declared unsuitable for involvement in charitable gaming and prohibited from involvement in any charitable game of chance. The original and supplemental notices of disciplinary action were signed by Sergeant Frank T. Brown, director of the Louisiana State Police, Gaming Enforcement Section, and cited numerous grounds for taking action against appellants.[1]
*886 An administrative hearing was held on September 17, 18, and 19, 1991. In a decision rendered November 15,1991, the administrative law judge concluded that the parties had violated the charitable gaming law and that Russell, Lucy and R & L were unsuitable for involvement in charitable gaming in any capacity. The administrative law judge further concluded that due to the association among the parties involved, and the unsuitable business relationship between the parties (including Russell and Lucy’s continuing direct and indirect financial interest in PAP), that Pete, Allen, and PAP, were also unsuitable for involvement in charitable gaming in any capacity.
The parties then filed a petition in the trial court for judicial review of the administrative law judge’s decision. Following a hearing, the trial court rendered judgment in favor of the Division, affirming the decision of the administrative law judge, pursuant to LSA-R.S. 49:964(G). This appeal followed.
BACKGROUND FACTS
The Parks Youth Club (Parks) is a nonprofit charitable organization in Parks, Louisiana, which was formed to help the underprivileged. Russell and Lucy have been members of Parks since 1978. In 1980, Russell and Lucy formed a corporation named R & L’s, to conduct catering services. On October 9, 1984, Russell and Lucy purchased a facility which eventually became known as R & L’s. This facility was used for R & L’s catering services, as well as bingo. In 1984, Parks began conducting bingo games at the facility known as R & L’s.
In 1986, Parks, for the first time, was required to operate pursuant to a charitable gaming license issued by the Division. Parks submitted its application for a gaming license; however, the application was initially denied as being in conflict with applicable laws. Specifically, the application was denied because Lucy was listed as an officer of Parks and/or a bingo manager for Parks, which sought to conduct gaming activities at R & L’s. In an effort to resolve these conflicts, Russell and Lucy executed an affidavit certifying that they would not participate in any bingo activities held by Parks at R & L’s. Parks was then issued a gaming license, which was renewed in 1987, 1988, 1989,1990, and 1991.
In 1988, the Division conducted an audit of Parks, covering the second quarter of 1987, through the first quarter of 1988 (April 1, 1987 to March 31, 1988). The audit revealed that seven gaming sessions had been conducted, which were not included on the approved license. Additionally, the audit revealed that the net proceeds to the charitable organization, after expenses, were only 0.2% compared to a statewide average of over 12%. The rental charged to Parks was $350.00 per session. As a result of this audit, the Division made recommendations to improve deficiencies noted.
A second audit was conducted covering the third quarter of 1988. The audit revealed that while the rental charged to Parks had been increased to $1,000.00 per session in the third quarter of 1988, net proceeds had increased substantially.
On May 8, 1990, a corporation named P.A.P., Inc. (PAP) was formed by Pete Devil-lier, Russell and Lucy’s son, and Allen Devil-lier, Russell and Lucy’s nephew. On May 23, 1990, Russell and Lucy executed a Credit Deed wherein they sold the building, known as R & L’s, to PAP. R & L’s (the corporation) maintained a management contract with PAP, allowing R & L’s (the corporation) to manage the building and its operations. Thus, Russell continued to run the business, including negotiation of leases, while Allen merely signed the lease agreements. PAP paid a management fee to R & L’s in the amount of $14,000.00 per month. According to Russell, Lucy, Pete and Allen, the decision to transfer the building in 1990, was made on the basis of Russell’s deteriorating health, and to allow the business to operate without interruption in the event of Russell's death.
In the 1987 and 1988 gaming license applications submitted by Parks, Desiré Bonin, Jr., was listed as the bingo caller. In the 1989, application, Raymond Doré was listed as the bingo caller in Parks’ application. *887 However, in the Parks application submitted on June 5, 1990, Russell was listed as the bingo caller. Additionally, the Parks application submitted in 1990 listed PAP as the commercial lessor.
On August 9, 1990, the Division conducted a covert investigation of PAP. At the gaming session, Sergeant David W. Richard, enforcement sergeant for the Division, observed Russell actively participating in the games as the bingo caller. The investigation continued, and on August 12, 1990, Trooper Bruce Stansbury observed Russell again calling bingo games being conducted by Parks. According to the Division, Russell participated as bingo caller on six occasions in August of 1990. During the course of the investigation, other violations were noted, and, in some instances, citations were issued.
Russell testified at the hearing that he only called three bingo games in August of 1990, and did so only because the usual caller, Raymond Doré, was ill with laryngitis. Doré and Russell also explained at the hearing that prior to submission of the 1990 application for a gaming license, the Parks membership discussed Russell’s position as an alternate caller, only in the event that the usual caller, Doré, was unavailable. Accordingly, Parks submitted the application, listing Russell as caller.
Based on the facts uncovered during the Division’s continuing investigation, proceedings were initiated against the parties, which eventually resulted in the instant appeal of the administrative law judge’s decision and its affirmation by the trial court. ■
ASSIGNMENT OF ERROR NUMBER ONE
The administrative law judge found, and the trial court affirmed the finding, that Russell violated the Louisiana Charitable Gaming Law. Specifically, the administrative law judge found that Russell violated LSA-R.S. 33:4861.12A(3), by participating in the holding, operating and conducting of charitable games of chance for Parks while operating as a commercial lessor and acting as an agent for PAP.
On appeal, Russell contends that he is not a commercial lessor, as defined in LSA-R.S. 33:4861.2, which defines a commercial lessor as “any person or other entity other than a bona fide nonprofit organization licensed under this Part who leases any building, structure, or premises to organizations licensed under the provisions of this Part.” (Emphasis added.) Thus, Russell argues, because Parks is licensed pursuant to the provisions of Title 40, and not Title 33, there is no violation since he did not lease to an organization “licensed under this Part.” We find no merit in this argument.
Prior to July 8, 1986, the effective date of LSA-R.S. 40:1485.1 et seq., charitable gaming was licensed and regulated locally, by the governing authority of parishes and municipalities. The applicable law was contained in Title 33 of the Louisiana Revised Statutes, namely, LSA-R.S. 33:4861.1 et seq., known as the Charitable Raffles, Bingo and Keno Licensing Law. ' LSA-R.S. 33:4861.1.
By Acts 1986, Number 752, § 3, the division of charitable gaming control was created and established in the office of state police of the Department of Public Safety and Corrections. LSA-R.S. 40:1485.3. The duties of the Division set forth in the statute include the duty to issue and renew annual state licenses, as required by law, for organizations conducting games of chance pursuant to the Charitable Raffles, Bingo, and Keno Licensing Law. LSA-R.S. 40:1485.4. Also, § 1 of Acts 1986, Number 752 enacted sub-sections E, and F, of LSA-R.S. 33:4861.4, which provide, as follows:
E. Notwithstanding any other provision of the Part to the contrary, no municipal or parish governing authority shall license any organization as authorized in this Part unless that organization has first obtained a charitable gaming license, from the division, as further provided in R.S. 40:1485.4.
F. (1) No organization shall hold, operate, or conduct any game of chance enumerated in Subsection A of this Section without obtaining a charitable gaming license or a special charitable gaming li *888 cense from the division, as further provided in R.S. 40:1485.5.[2]
After carefully considering these statutes, we find no merit in appellants’ argument on this issue. As appellee correctly notes in its brief to this Court, Parks was clearly subject to the provisions of both Title 33 and Title 40.
Title 40, creating and establishing the Division, was enacted to ensure statewide compliance with the provisions of Title 33. At the time of the violations, while Parks may have been operating under a state license issued by the Division, it was nonetheless subject to the provisions and prohibitions contained in LSA-R.S. 33:4861.1 et seq.
As appellee notes in its brief, if this Court were to accept appellants’ argument, then commercial lessors leasing premises to organizations operating in parishes or municipalities that do not require separate licensing, would not be subject to the authority of the Division. Clearly, this situation would be contrary to the express provisions of LSA-R.S. 40:1485.4(7), which charges the Division with a duty to “enforce all provisions of law and regulations relative to charitable gaming_” LSA-R.S. 40:1485.4(7) (Emphasis added).
Accordingly, we find no merit in this assignment of error.
ASSIGNMENT OF ERROR NUMBER TWO
Appellants argued at the administrative level, as well as in the trial court, that the provisions of LSA-R.S. 33:4861.12A(1) and LSA-R.S. 33:3861.12A(3), when read together, are unconstitutionally vague. Appellants contend that these statutes are vague because they fail to address the situation where the commercial lessor is also an active member of the organization. We find no merit in this argument.
LSA-R.S. 33:4861.12A(1) provides, in pertinent part, as follows:
No person shall hold, operate, or conduct, or assist in holding, operating, or eonducting any game or games of chance under any license issued under this Part except an active member of the organization or association to which the license is issued.
LSA-R.S. 33:4861.12A(3) provides, as follows:
No manufacturer, .distributor, commercial lessor, or his agents or employees, who directly or indirectly leases premises or sells, leases, or otherwise distributes gaming supplies or equipment, or furnishes any commodities or services in relation to the conduct of any charitable game of chance shall take part in the holding, operation, or conduct of a game of chance. However, nothing in this Part shall prohibit the owner of a premises from having a representative present to protect his interests in the premises.
A law is fatally vague and offends due process when it denies a person of ordinary intelligence a reasonable opportunity to know what action is prohibited so that he may act accordingly. Hopping v. Louisiana Horticulture Commission, 509 So.2d 751, 756-757 (La.App. 1st Cir.1987). Laws regulating business behavior are held to a lesser standard of “definiteness” than statutes imposing criminal penalties. Hopping, 509 So.2d at 757.
After reviewing these statutes, we conclude that the laws do not deny a person of ordinary intelligence a reasonable opportunity to know what action is prohibited.
Moreover, appellants’ argument fails to take into account the general, well established rules of statutory construction. Two basic rules of statutory construction are (1) that when a law is clear and free from ambiguity, it must be given effect as written, and (2) laws pertaining to the same subject matter should be construed in reference to each other. Bagert v. Board of Ethics for Elected Officials, 594 So.2d 922, 923 (La.App. 1st Cir.1992). Where two statutes deal with the same subject matter, they should be har *889 monized if possible. See Hayden v. Richland Parish School Board, 554 So.2d, 164,167 (La.App. 2nd Cir.1989), writ denied, 559 So.2d 124 (La.1990).
Applying these rules of statutory construction, the statutes, when read together, require that only active members of the organization or association to which the license is issued are to “hold, operate, or conduct, or assist in holding, operating or conducting, games of chance;” except, however, that no manufacturer, distributor, commercial lessor, or his agents or employees shall take part in the holding, operating, or conducting of a game of chance. Stated another way, only active members of the organizations may participate in charitable gaming, but not if that person is a commercial lessor. These laws do not deny a person of ordinary intelligence a reasonable opportunity to know what action is prohibited.
As appellee correctly points out in its brief to this Court, and as the administrative law judge correctly noted, any other construction or interpretation would allow commercial lessors to circumvent the provisions by simply joining any organization or association conducting games at the lessor’s halls.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER THREE
Appellants contend on appeal that the Division was without authority to prohibit their involvement in charitable gaming activities and, by doing so, exceeded its statutory authority. According to appellants, the only penalty options which were available to the Division are contained in LSA-R.S. 33:4861.-16, which specifies that any person, association, or corporation violating any provisions of this Part or any rule or regulation of the Division, shall be subject to a fine imposed by the Division or to suspension or revocation of its license. See also LSA-R.S. 40:1485.6D, and LSA-R.S. 40:1485.4.
At the time of the alleged offenses, commercial lessors did not operate under a license issued by the Division. Further, the record herein does not indicate that at the time disciplinary action was taken against appellants, they were operating under a commercial lessor’s license issued by the Division. The option of revocation or suspension of appellants’ license was not available to the Division.[3] Thus, under the express authority granted to the Division, the only available penalty option was the imposition of a fine.
An administrative board or agency has only the power and authority expressly granted by the Constitution or statute. Nevertheless, some power and authority may be implied as necessary and appropriate in order to effectuate the express powers granted to, or imposed upon, such board or agency. Realty Mart, Inc. v. Louisiana Board of Tax Appeals, 336 So.2d 52, 54 (La.App. 1st Cir.1976).
LSA-R.S. 40:1485.1 contains the legislative declaration of purpose, and provides, in pertinent part, as follows:
A. The Legislature of Louisiana does hereby recognize the state’s role and responsibilities in ensuring that the net proceeds of charitable games of chance conducted pursuant to the Charitable Raffles, Bingo, and Keno Licensing Law are contributed to bona fide charitable causes. The legislature further finds that it is in the public interest to prevent infiltration of elements of organized crime or professional gambling into charitable gaming.
B. Therefore, it shall be the policy of the state of Louisiana to decrease the potential for fraud in charitable games of chance and to increase compliance with the provisions of the Charitable Raffles, Bingo, and Keno Licensing Law and other applicable laws and regulations through monitoring and enforcement as well as public education and awareness of the purposes of these laws and regulation. (Footnote omitted.)
In light of the strong public policy outlined above, we find that the Division’s actions were necessary and appropriate to effectuate its statutory mandate and to carry out the policies declared by the legislature. *890 Moreover, the determination of unsuitability allows an organization to continue conducting charitable gaming upon the removal of unsuitable persons and relationships.[4]
Accordingly, this assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS FOUR, FIVE AND SIX
Finally, appellants contend on appeal that the penalty imposed upon them is so severe as to constitute an abuse of discretion. We disagree.
The administrative law judge presided over a hearing which lasted for three days, during which extensive evidence was presented. The Division presented extensive evidence, documentary and testimonial, to establish the violations which the Division claimed made the appellants unsuitable for involvement in charitable gaming. Appellants presented an alternative explanation of the events detailed, and which the administrative law judge apparently chose not to believe. Where the administrative agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues. LSA-R.S. 49:964G(6).
It is well settled that in reviewing conclusions and exercises of agency discretion, the decision of an agency will not be set aside unless the decision can be characterized as arbitrary, capricious or an abuse of agency discretion. See Johnson v. Odom, 536 So.2d 541 (La.App. 1st Cir.1988), writ denied, 537 So.2d 213 (La.1989).
In the decisions rendered against Russell, Lucy and R & L’s, the administrative law judge stated, “that Russell J. Devillier, Lucy F. Devillier and R & L Catering, Inc., be declared unsuitable for involvement in charitable gaming activities.” Regarding Pete, Allen and PAP, the administrative law judge stated, “due to their obvious association with P.A.P., Inc., I find that there does exist an unsuitable business relationship between Russell J. and Lucy F. Devillier and R & L Catering, Inc., and Pete R. and Allen P. Devillier and P.A.P., Inc.,” and then concluded, “that Pete R. Devillier, Allen P. Devillier and P.A.P., Inc., be declared unsuitable for involvement in charitable gaming activities.”
We have carefully reviewed the entire record in these proceedings, and we are unable to conclude that the decision rendered by the administrative law judge was arbitrary, capricious or an abuse of agency discretion. Despite appellants’ assertions that they are forever banned from involvement in charitable gaming, we find no such restriction in the orders issued. Under the administrative law judge’s decision, there is no provision which prohibits appellants from at some point in the future, applying for licensure with the Division. At that time, the Division, after reviewing the applicants’ status, current business relationships, and any other relevant factors, can take the appropriate action in accordance with the applicable law and regulations.
This assignment of error is without merit.
CONCLUSION
For the above and foregoing reasons, we find no merit in the arguments presented by appellants herein. Accordingly, the August 12,1992, judgment of the lower court, affirming the decisions rendered by the administrative law judge, is hereby affirmed. All costs of this appeal are assessed against appellants, Russell J. Devillier, Lucy F. Devillier, R & L Catering, Inc., Pete R. Devillier, Allen P. Devillier, and P.A.P., Inc.
AFFIRMED.

. The Division also initiated proceedings against the Parks Youth Club (Parks), seeking to suspend its charitable gaming license for a period of five years. Notices were also issued to Raymond Doré (Doré), Amanda Frederick (Frederick) and Della Albert (Albert), declaring them unsuitable for involvement in charitable gaming and prohibiting their involvement in charitable gaming. Following the administrative hearing, Parks’ suspension was recalled. The administrative law judge amended the Division's prohibition against Frederick and instead ordered that she be suspended from holding, operating, conducting, or assisting in the holding, operating, or conducting of any charitable game of chance, licensed by the Division in the state of Louisiana, for six months. Albert and Doré were likewise suspended, for three months. These parties did not seek judicial *886 review of the administrative law judge’s decisions and are not parties to this appeal.

. Acts 1986, No. 752, § 1 actually enacted LSA-R.S. 33:4861.4D, and E. However, Acts 1986, No. 1070, § 1, effective August 30, 1986, redesig-nated subsections D, and E, as subsections E, and F, as presently contained in LSA-R.S. 33:4861.4.

. By Acts 1990, No. 767, effective September 7, 1990, the legislature amended and enacted provisions requiring commercial lessors to obtain a license from the Division.

. By Acts 1991, No. 150 § 1, the legislature amended LSA-R.S. 40:1485.4(4), allowing the Division to issue orders for restriction of licenses issued.