669 So.2d 1275 (1996)
Cliff THOMAS
v.
ORLEANS PRIVATE INDUSTRY COUNCIL, INC.
No. 95-CA-1577.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1996.
Writ Denied April 26, 1996.
*1276 Phelps Dunbar, William D. Aaron, Jr. and N. Eleanor Graham, New Orleans, for Plaintiff-Appellee.
Weiss & Eason, L.L.P., Gregory C. Weiss, Stephen R. Barry, and Kathryn M. Caraway, New Orleans, for Defendant-Appellant.
Before BARRY, KLEES and WALTZER, JJ.
*1277 BARRY, Judge.
Cliff Thomas sued the Orleans Private Industry Council (OIPC) for past wages, penalties, attorney fees and damages. The trial court rendered judgment for Thomas, and OPIC appeals. We affirm.

Facts
The Job Training Partnership Act (JTPA) provides federally funded job training programs at the state level. Regulations promulgated by the United States Department of Labor to implement the JTPA are set forth in 20 C.F.R. §§ 626 through 638. See 20 C.F.R. § 626.2(a) (1995). The money is disbursed to the states by the United States Department of Labor. Under the program the state is geographically divided into Service Delivery Areas. OPIC is a private non-profit organization which serves the New Orleans area under the JTPA.
Thomas was President and CEO of OPIC from January 1, 1992 to September 2, 1994. Thomas testified that Jose S. Canseco, chairman of the OPIC Strategic Planning Committee, had contacted Thomas regarding OPIC. Canseco's verbal offer unqualifiedly included a performance-based bonus to increase Thomas' annual compensation above the basic salary. Thomas testified he would not have accepted the position without the bonus.
Thomas' written employment contract provided for an annual base salary of $75,000 and a $15,000 bonus based on achieving specific goals:

Basic Compensation. For the services rendered by the President under this contract, PIC shall pay the President a basic salary of Seventy Five Thousand Dollars ($75,000) per year.... The PIC agrees to review the performance of the President... for the purpose of awarding a bonus of up to $15,000 based on the achievement of the following agreed upon goals during his initial six months of employment:
the establishment of OPIC official headquarters.
the hiring of his top management and administrative staff.
the development and implementation of all required administrative procedures.
the initiation of OPIC's Summer Youth Program.
Thomas testified the criteria for subsequent bonuses were provided by the OPIC board and based on federal guidelines.
The contract "presume[d] that such compensation or sums are allowed ... under federal, state, and local rules" and provided:
If any such compensation or sum is not allowed or permitted by federal, state or local rules and regulations then the obligation to pay such compensation or sums shall be null and void and the PIC and President hereby agree to, in good faith, attempt to find a method to legally provide said compensation or sum.
The trial court held that neither federal or state regulations prohibit a bonus for the OPIC President and it awarded unpaid bonuses totaling $30,000. The court assessed a $25,961.40 penalty due to OPIC's failure to pay the bonus, vacation, and retirement compensation.[1]

Allowable Cost
OPIC argues that the bonus provision of Thomas' contract is null because a bonus is not allowable under federal and state regulations. That argument has no merit.
Allowable costs are defined in 20 C.F.R. § 627.435 (1995):
(a) General. To be allowable, a cost shall be necessary and reasonable for the proper *1278 and efficient administration of the program, be allocable to the program, and, except as provided herein, not be a general expense required to carry out the overall responsibilities of the Governor or a governmental subrecipient. [Emphasis added]
"Governor" means the recipient (the legal entity which receives the award) of JTPA funds awarded to the State. 20 C.F.R. § 626.5 (1995).
The federal regulation does not define "necessary and reasonable." Robert Fore, Federal Training Programs Director for the Louisiana Department of Labor, testified that the regulation is subject to interpretation. Fore said in his opinion a bonus might not be allowable based on remarks by Judy Jackson of the U.S. Department of Labor. However, Jackson did not testify and the substance or basis of her hearsay remark is not in the record.
The federal regulation directs the state to implement more specific guidelines on allowable costs:
(i) The Governor shall prescribe and implement guidelines on allowable costs for SDA [Service Delivery Area] ... that are consistent with the cost principles and allowable costs provisions of paragraphs (a) through (h) of this section and that include, at a minimum, provisions that specify the extent to which the following cost items are allowable or unallowable JTPA costs and, if allowable, guidelines on conditions or the extent of allowability, documentation requirements, and any prior approval requirements applicable to such cost items:
(1) Compensation for personal services of staff, including wages, salaries, supplementary compensation, and fringe benefits;.... [Emphasis added]
20 C.F.R. § 627.435(i) (1995).
Supplementary compensation such as a bonus is clearly contemplated under § 627.435(i). The record does not contain a state guideline which precludes a bonus.
Letters from Joseph Stone, Assistant Secretary of the Louisiana Department of Labor, to Mr. Canseco of OPIC, were admitted into evidence and express that department's "opinion" that a bonus is not allowable under the federal regulations. Those letters are based on Mr. Stone's and Mr. Fore's interpretation of the federal provision and an unsubstantiated "discussion" with a federal representative rather than state guidelines implemented under the directive of 20 C.F.R. § 627.435(i) (1995).
Plaintiff submitted into evidence a letter from Mr. Fore which was sent to all service delivery areas. Fore testified the letter describes a JTPA regulation based on federal guidelines and it does not preclude a bonus:
Compensation for personal services includes all remuneration ... for services rendered during the period of performance under the grant agreement, including but not necessarily limited to wages, salaries, and supplementary compensation and benefits.... [Emphasis added.]
OPIC's argument is not based on a state or local regulation; it is based on the unsubstantiated opinions of Mr. Stone and Mr. Fore. OPIC cites Devillier v. State, Department of Public Safety, 634 So.2d 884 (La. App. 1st Cir.1993), writ den. 94-0224 (La.3/18/94), 635 So.2d 1101, for the proposition that the Louisiana Department of Labor is permitted to disallow a bonus based on its mandate to interpret legislative regulations and prescribe guidelines on allowable costs. Devillier held that the Louisiana Office of State Police, Division of Charitable Gaming Control, was authorized to prohibit the plaintiffs' involvement in charitable gaming activities. The Court held that although the law did not expressly grant the Division the authority to suspend plaintiffs' license which was not issued by the Division, the Division's action was necessary and appropriate to effectuate its statutory mandate to ensure statewide compliance with the Louisiana charitable gaming law.
This case is distinguishable from Devillier because the federal regulations direct the *1279 state to implement guidelines on allowable costs, including "supplementary compensation." There is no evidence those guidelines were implemented. Absent state guidelines, there is no prohibition against a bonus.
The record does not support OPIC's argument that a bonus is not allowable, and the trial court correctly held that a bonus is permissible.
OPIC does not contest that Thomas earned the bonuses. Thomas stated he achieved the criteria for the first and second year bonus. Jim Thorns, chairman of OPIC's board, corroborated that testimony. Thus, the $30,000 award for bonuses was proper.

Penalties and Attorney Fees
OPIC argues La.R.S. 23:631 does not apply, that there was a bona fide dispute concerning Thomas' entitlement to the bonus, and OPIC timely paid Thomas' vacation and retirement compensation.
Penalties and attorney fees for failure to timely pay an employee upon termination of employment are controlled by La.R.S. 23:631 and 632.
Section 631 requires payment within three days after termination of employment:
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation.... [Emphasis added]
An employer who fails or refuses to comply with § 631 is subject to penalties and attorney fees. La.R.S. 23:632.

Applicability of La.R.S. 23:631 and 632
OPIC argues that § 631 does not apply because Thomas' bonus is payable yearly, not "by the hour, day, week, or month" as prescribed in the statute. That argument has no merit.
Sections 631 and 632 are penal, must be strictly construed, and their provisions yield to equitable defenses. Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619, 621.
Boudreaux considered the scope of §§ 631 and 632 and held those statutes refer to "wages," money paid or received for work or services. Id. at 621-622. The phrase "whether the employment is by the hour, day, week, or month" refers to the pay period for the compensation. Id. at 622; Mason v. Norton, 360 So.2d 178, 180 (La. 1978).
Boudreaux held that § 631 did not apply to severance pay under the plaintiff's contract because that pay was a one time payment not subject to a pay period, was not due until after termination or resignation, and was therefore not "wages" under the statute.
Although the compensation may be due under the employment agreement upon resignation or termination of the employee, the compensation was not due under the terms of employment, i.e. the pay period. Hence, we conclude that the additional compensation under (the contract) was not a "wage" within the meaning and intent of La.R.S. 23:631 and 632.
Boudreaux's analysis is applicable to the extent we consider whether Thomas' bonus was due under the terms of employment, i.e., the pay period, during the employment, and constitutes payment for services rendered. The testimony shows Canseco's verbal offer to Thomas included the $15,000 bonus to increase Thomas' annual income. The contract set a $75,000 salary payable bi-weekly and a bonus up to $15,000 based on achievement of specific objectives "during his ... employment." Although the contract does not designate when the bonus would be paid, that sum clearly represents remuneration for services rendered under a pay period and therefore constitutes "wages" under §§ 631 *1280 and 632. But see Dore v. WHC Lease Service, Inc., 528 So.2d 235, 239 (La.App. 3d Cir.1988), which held that although plaintiff's bonus was clearly payment for services, § 631 was inapplicable because that bonus was not payable by the hour, day, week, or month. Such a restrictive reading of § 631 overlooks Boudreaux's conclusion that § 631 applies to "wages" due under the pay period.
Other cases cited by OPIC are not dispositive. Cochran v. American Advantage Mortgage Company, Inc., 93-1480 (La.App. 1 Cir. 6/24/94), 638 So.2d 1235 held § 631 applies to a bonus negotiated after plaintiff's initial employment contract because that bonus was remuneration for services provided, represented part of her compensation, and was payable monthly. However, the penalty was not due because there was a bona fide dispute over the amount owed. Because the bonus was payable monthly, Cochran did not decide the issue before this Court. The bonus in Ward v. Tenneco Oil Co., 564 So.2d 814 (La.App. 3d Cir.1990) was dependent on plaintiff remaining with the company until it was sold and plaintiff was not entitled to the bonus if plaintiff left early, regardless of services rendered. In Nguyen Van Dung v. Tel Ag Services, Inc., 407 So.2d 1339 (La. App. 3d Cir.1981), the rate of pay was indefinite.
Considering that Thomas relied on the bonus as additional compensation under his initial contract negotiations, that the bonus was due under the terms of employment for specific services rendered during the employment, and Thomas achieved those objectives, we hold that the bonus constituted "wages" subject to La.R.S. 23:631 and 23:632.

Bona Fide Dispute
OPIC submits that a bona fide dispute over whether the bonus is allowable precludes the assessment of penalties and attorney fees. That argument has no merit.
Generally, when there is a good-faith question whether the employer actually owes past-due wages, resistance to payment will not trigger penalty wages. Cochran v. American Advantage Mortgage Company, Inc., 638 So.2d at 1240.
OPIC's witnesses testified the bonus probably is not allowable under the federal regulations. There is no evidence to substantiate that opinion. The federal regulation requires an allowable cost to be "necessary and reasonable for the proper administration of the program" but does not define "necessary and reasonable." The regulation directs the state to implement guidelines covering employee compensation, including "supplementary compensation," and to define whether that cost is necessary and reasonable. There is no evidence the state guidelines prohibit the payment of a bonus. Moreover, the testimony shows bonuses under JTPA have been paid in other states, indicating the federal regulations do not disallow a bonus. There is no basis to disturb the trial court's ruling.
Because we hold Thomas was entitled to the bonus and OPIC is liable for penalties and attorney fees for failing to pay that bonus, we need not consider the date of Thomas' initial demand for payment of vacation and retirement compensation. OPIC does not contest the amount of the penalty and attorney fees. We pretermit the remaining assignments of error.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] The reasons for judgment as amended state that penalties were awarded in the amount of $5,884.55 for failure to timely pay unused vacation and retirement and $25,961.40 for failure to pay bonuses. The judgment awarded penalties of $25,961.40 "for OPIC's failure to timely pay bonuses and other sums...." When oral reasons conflict with a written judgment, the latter controls. Marino v. Marino, 576 So.2d 1196, 1198 (La.App. 5th Cir.1991).