HIGGINBOTHAM, J.,
concurring in part and dissenting in part.
|,I partially disagree with the majority, because I conclude that Dr. Slaughter’s “wages” were clearly defined in the two-year employment contract entered into between Dr. Slaughter and the Southern University Board. The provision regarding Dr. Slaughter’s services to be rendered as President of the Southern University System unambiguously defined “earned compensation” to be a base salary of $220,000 per year, a vehicle allowance of $1,000 per month, a housing allowance of $3,000 per month, and a salary supplement of $200,000 per year to be provided by the Southern University System Foundation. It is undisputed that the Foundation provided the salary supplement for both years of the employment contract and Dr. Slaughter paid taxes on gross taxable income for both years that included the base salary, allowances, and salary supplement.
In actions to recover unpaid wages pursuant to LSA-R.S. 28:361-689, jurisprudence has held that “wages” are any amount due under the terms of employment, and which are earned during a pay period. Price v. Stranco, Inc., 03-1762 (La.App. 1st Cir.9/8/04), 887 So.2d 82, 85, writ denied, 04-2485 (La.12/17/04), 888 So.2d 867. The word “earn” is defined as “[t]o acquire by labor, service, or performance.” Id., quoting Black’s Law Dictionary 525 (7th ed.1999) (emphasis added). At trial, it was determined that Dr. Slaughter was paid the ^entire amount of his “earned compensation” on the last day of each month for his services as President of the Southern University System during the two-year pay period as defined in the employment contract. Because Dr. Slaughter’s compensation — base, allowances, and supplement — was due and paid under the express terms of the employment contract for services rendered by Dr. Slaughter, I conclude that the entire amount constituted Dr. Slaughter’s “wage” within the meaning and intent of LSA-R.S. 23:631 and 632.
I find the facts of this case analogous to a situation where an employee receives and relies upon an annual or monthly bonus for services rendered during a pay period, as negotiated in an employment contract. See Cochran v. American Advantage Mortgage Co., Inc., 93-1480 (La.App. 1st Cir.6/24/94), 638 So.2d 1235, 1239; Williams v. Dolgencorp, Inc., 04-139 (La.App. 3d Cir.9/29/04), 888 So.2d 260, 263-264, writ denied, 05-0174 (La.3/24/05), 896 So.2d 1042; Thomas v. Orleans Private Industry Council, Inc., 95-1577 (La.App. 4th Cir.2/15/96), 669 So.2d 1275, 1280, writ denied, 96-0686 (La.4/26/96), 672 So.2d 671. The Louisiana jurisprudence has looked beyond the label of classifying amounts due to departing employees, and recognized that regularly-paid bonuses or perks provided to and relied upon by employees under express terms in payment *465 packages or contracts are part of the employee’s compensation and thus constitute “wages.” See Kaplon v. Rimkus Consulting Group, Inc. of Louisiana, 09-1275 (La.App. 4th Cir.4/28/10), 89 So.3d 725, 734-735, writ denied, 10-1207 (La.7/2/10), 39 So.3d 587.
The bonus — or in this case, the allowances and salary supplement — are remuneration for services provided and are relied upon by the employee as additional compensation that was expressly considered and agreed to by the parties during the employment contract negotiations. I believe the allowances and salary | .^supplement in this case were actually negotiated perks or bonuses that were given in addition to the regular base pay for services rendered in the position of President of the Southern University System. Thus, I find that the trial court erred in failing to include the allowances and salary supplement along with Dr. Slaughter’s base salary when considering Dr. Slaughter’s unpaid wages claim and his claim for penalties and attorney fees. For this reason, I respectfully disagree with the majority’s opinion affirming the trial court’s determination of the “wages” issue and dismissal of Dr. Slaughter’s claims against the Board.
Additionally, for the same reasons outlined in my dissenting opinion in Dr. Slaughter’s separate appeal of the judgment ordering sanctions, I respectfully disagree with the majority’s discussion of the timeliness of Dr. Slaughter’s motion to re-cuse.[1] However, I agree with the majority’s conclusion that the motion to recuse was unfounded, and in all other aspects, I agree with the remainder of the majority opinion.
For the outlined reasons, I respectfully agree in part and dissent in part. .

. See Higginbotham, J., dissenting in Slaughter v. Board of Supervisors, 2010-1114 (La.App. 1st Cir.8/2/11), 76 So.3d 465, also rendered this date.