KUHN, J.
12Pr. Ralph Slaughter (Dr. Slaughter) appeals the trial court’s judgment ordering him to pay monetary sanctions, attorney fees, and costs. For the reasons that follow, we affirm the judgment of the trial court.
BACKGROUND
Dr. Slaughter, the former President of the Southern University System, filed suit in September 2009 against the Board of Supervisors of the Southern University and Agricultural and Mechanical College System (Board) for past due wages. After a trial, the judge orally rendered judgment in favor of the Board.[1] A few days later, but before the written judgment was signed, Dr. Slaughter filed a motion to recuse the trial judge, Judge Timothy Kelley (Judge Kelley). The motion alleged that Judge Kelley was biased and prejudiced against Dr. Slaughter and his counsel, Jill Craft (Ms. Craft), and failed to disclose on the record that his wife, Angele Davis (Ms. Davis), was the Louisiana Commissioner of Administration.
The motion to recuse was supported by Dr. Slaughter’s affidavit, verifying that all the facts and allegations in the motion and accompanying memorandum were true and correct to the best of his knowledge, information, and belief. Dr. Slaughter’s affidavit further expressly stated that “[a]t no time prior or during trial ... did Judge Kelley disclose to me that he is the spouse of Commissioner of Administration, Angele Davis”; that at the trial, Ms. Davis’ name was mentioned by the last two witnesses, including a state employee who “ultimately reports” to |sMs. Davis; and that Judge Kelley mocked Ms. Craft and “openly expressed contempt toward” Dr. Slaughter and Ms. Craft during the trial.
*468 The Board opposed the motion, arguing that the record did not reflect the facts alleged in support of the claim of bias and that Ms. Craft knew about the relationship between Judge Kelley and Ms. Davis before the trial, but failed to tell Dr. Slaughter. The Board further argued because neither the State of Louisiana nor the Division of Administration is a party to the suit, the motion’s second ground was invalid, and the motion was frivolous.
Judge Kelley ordered that the motion to recuse be referred to another judge for hearing; the motion was allotted to Judge Janice Clark (Judge Clark). Prior to the recusal hearing, Dr. Slaughter filed a motion to recuse Judge Clark on the basis that the Board’s attorneys (the law firm of DeCuir, Clark & Adams, as well as Winston G. DeCuir, Sr. and Winston G. De-Cuir, Jr.) were representing Judge Clark and her husband in a pending lawsuit in city court.
The Board maintained that the motion to recuse Judge Clark was untimely because before the motion was filed, Ms. Craft knew the DeCuir firm, as well as Winston G. DeCuir, Jr. and Sr., had withdrawn as counsel of record for the Board.[2] The Board also asserted that Ms. Craft had knowledge of Judge Clark’s legal representation by the DeCuirs as far back as 2007. At that time, Ms. Craft was representing Dr. Slaughter in a different lawsuit against the Board, and Judge Clark, who was presiding over the matter, disclosed that the Board’s attorney, the DeCuirs, also represented her.
14Judge Clark denied the motion to re-cuse herself. The next day, Judge Clark denied the motion to recuse Judge Kelley and concluded that motion was untimely. In her oral reasons, Judge Clark reasoned that the evidence produced at the hearing showed before the lawsuit for past due wages was filed Ms. Craft was aware Ms. Davis was married to Judge Kelley. Judge Clark further found that the evidence failed to support the ground of bias.
Dr. Slaughter filed an application for supervisory writs in this court, seeking review only as to Judge Clark’s ruling denying the motion to recuse herself and her failure to refer that motion to another judge.[3] The record does not reflect that a request for a stay of the proceedings was made to the trial court or this court.
While the writ application was pending, the Board filed a motion for sanctions, arguing that both motions to recuse were frivolous and that the Board was entitled to an award of sanctions, attorney fees, and costs against Dr. Slaughter and Ms. Craft. After argument at the March 15, 2010 hearing, Judge Kelley ordered Dr. Slaughter to pay sanctions in the amount of $500 to the district court, attorney fees in the amount of $7,500 to the Board’s attorney, Mr. Lewis Unglesby (Mr. Un-glesby), and to pay “all sums with interest from the date of judgment and all further costs that may be incurred as a result of the sanctions.”[4] Judge Kelley did not is *469 sue sanctions against Ms. Craft; nor was she cast in | ¡judgment.
On April 22, 2010, this court granted Dr. Slaughter’s application for writs in Slaughter v. Board of Supervisors, 2010-0281 (La.App. 1st Cir.4/22/10), pertaining to Judge Clark’s ruling denying the motion to recuse herself. The action was as follows:
WRIT GRANTED. The Judge’s ruling of January 25, 2010, denying plaintiffs motion to recuse her is reversed and judgment is entered remanding this matter for reallotment of the motion to recuse Judge Clark to another division for consideration. Plaintiff has presented sufficient grounds to require such reallotment.
The record reflects that on May 24, 2010, Dr. Slaughter filed a motion to vacate the January 25, 2010 ruling by Judge Clark denying the motion to recuse Judge Kelley. Dr. Slaughter argued that Judge Clark’s ruling as to the recusal of Judge Kelley became null and void by this court’s writ action reversing Judge Clark’s ruling on motion to recuse herself. The Board opposed the motion to vacate, arguing that the writ action only applied to the issue of whether Judge Clark should have referred for reallotment the motion to recuse herself. The Board asserted the proper procedure would be to hold the motion to vacate in abeyance until a decision on the motion to recuse Judge Clark was rendered.
The appellate record does not reveal the disposition of the motion to vacate, but on June 17, 2010, another judge of the district court signed a judgment, stating that the motion to recuse Judge Clark was moot and ordering the reallotment of the motion to recuse Judge Kelley. The motion to recuse Judge Kelley was realloted to Judge Wilson Fields (Judge Fields). After a hearing, Judge Fields denied the motion to recuse Judge Kelley. Judge Fields reasoned that prior to the trial of the wage suit, Ms. Craft knew that Judge Kelley was married to Ms. Davis, that Ms. | nDavis’ name was only mentioned during the testimony of the last two witnesses at the trial, that a review of the trial transcript did not indicate any bias against Dr. Slaughter or Ms. Craft, and that it appeared Judge Kelley made his ruling in the wage suit based on the law.[5] On August 3, 2010, Judge Fields signed the written judgment denying the motion to recuse Judge Kelley.
STANDARD OF REVIEW
Dr. Slaughter contends that the issue of whether the motions to recuse Judges Kelley and Clark were frivolous, is a question of law, and thus, warrants a de novo review. The Board argues that because the issue involves the imposition of sanctions, the applicable standard is manifest error.
A trial court’s determination regarding the imposition of sanctions is subject to the manifest error or clearly wrong standard of review. Once the trial court finds a violation of La. C.C.P. art. 863 and imposes sanctions, the determination of the type and/or the amount of the sanction is reviewed on appeal utilizing the abuse of *470 discretion standard. Stroscher v. Stroscher, 2001-2769 (La.App. 1st Cir.2/14/03), 845 So.2d 518, 526; Connelly v. Lee, 96-1218 (La.App. 1st Cir.5/9/97), 699 So.2d 411, 414, writ denied, 97-2825 (La.1/30/98), 709 So.2d 710.
APPLICABLE LAW
To impose sanctions, a trial court must find that one of the affirmative duties imposed by Article 863 has been violated. Connelly, 699 So.2d at 414. Article 863 provides, in pertinent part:
|7B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:
(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.
(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.
(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief....
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction....
G. If the court imposes a sanction, it shall describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed.
Article 863 imposes an obligation on litigants and their attorneys to make an objectively reasonable inquiry into the facts and law; subjective good faith will not satisfy this duty of reasonable inquiry. Connelly, 699 So.2d at 414. The article | sdoes not empower a trial court to impose sanctions simply because a particular argument or ground for relief is subsequently found to be unjustified; failure to prevail does not trigger an award of sanctions. Article 863 is intended to be used only in exceptional circumstances; where there is even the slightest justification for the assertion of a legal right, sanctions are not warranted. Tubbs v. Tubbs, 96-2095 (La.App. 1st Cir.9/19/97), 700 So.2d 941, 945.
La. C.C.P. arts. 151-161 provide the grounds and procedures for recusing a judge. Article 151(A) provides, in pertinent part, that a judge shall be recused when he:
(3) Is the spouse of a party ... [or]
*471 (4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties’ attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.
A judge is presumed to be impartial. The grounds for recusal enumerated in Article 151 are exclusive and do not include a “substantial appearance of the possibility of bias” or even a “mere appearance of impropriety” as causes for removing a judge from presiding over a given action. Article 151 requires a finding of actual bias or prejudice, which must be of a substantial nature and based on more than conclusory allegations. Whalen v. Murphy, 2005-2446 (La.App. 1st Cir.9/15/06), 943 So.2d 504, 509, writ denied, 2006-2915 (La.3/16/07), 952 So.2d 696; Augman v. City of Morgan City, 2003-0396 (La.App. 1st Cir.12/31/03), 864 So.2d 248, 249; Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc., 2000-1930 (La.App. 1st Cir.9/28/01), 809 So.2d 1040, 1050.
| ^Article 154 provides:
A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recu-sation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.
A motion to recuse the trial judge filed after the trial or hearing is completed, but before judgment is signed, is timely under Article 154, if the grounds for recusal are discovered after the trial or hearing. See Suazo v. Suazo, 2007-0795 (La.App. 1st Cir.9/14/07), 970 So.2d 642, 651 n. 6, writ denied, 2007-2291 (La.12/14/07), 970 So.2d 539; see also Radcliffe 10, L.L.C. v. Zip Tube Systems of Louisiana, 2006-0128 (La.11/3/06), 942 So.2d 1071, 1073-74. In other words, the motion to recuse must be filed immediately after the party discovers the facts constituting the grounds for recusation. Id.
In Southern Casing of Louisiana, Inc., this court addressed the issue of a judge’s recusation based on the defendant’s allegations of bias, prejudice or interest in the outcome; the defendant also argued the trial judge should have been recused in order to avoid any appearance of bias in favor of the plaintiff. This court stated:
Recusation of a judge involves either a judge removing himself or being removed from a case and being replaced by another judge. Recusal may be voluntary as when a judge takes himself off a case for legally compelling reasons or simply because he believes that he cannot fairly and impartially judge a matter before him. La. C.C.P. art. 152; La. C.Cr.P. art. 672. It may be involuntary as when a litigant files a motion to re-cuse for stated legal reasons, the judge refuses to recuse himself, and court proceedings thereafter result in his being recused by another trial judge or by an appellate court. La. C.C.P. art. |1ft151; La.C.Cr.P. art. 671; In re Lemoine, 96-0-2116, p. 4 (La.1/14/97), 686 So.2d 837, 839, on rehearing. 692 So.2d 358.
In each possible recusal situation, there is a countervailing consideration that militates in favor of a judge’s not recusing himself, or being recused. It is that the judge has an obligation, part of his sworn duty as a judge, to hear and decide cases properly brought before *472 him. He is not at liberty, nor does he have the right, to take himself out of a case and burden another judge with his responsibility without good and legal cause. Id. at 839-840.
Matters relating to judicial disqualification due to kinship, personal bias, and remoteness of interest are generally matters of legislative discretion. The traditional common law rule was that a judge could not be disqualified for bias or prejudice. But the recent trend has been to adopt statutes permitting disqualification on those grounds. Pierce v. Charity Hosp. Of La., 550 So.2d 211, 213 (La.App. 4th Cir.1989), writ denied, 551 So.2d 1341 (La.1989). Although La. C.Cr.P. art. 671 has included bias and prejudice as a ground for recusation in criminal cases since 1966, La. C.C.P. art. 151 did not include those grounds until 1987. Prior to that time, impartiality, bias, and prejudice were not statutory grounds for recusation in a civil matter. Id. Currently, both La.C.Cr.P. art. 671 and La. C.C.P. art. 151 list as a recusal ground such bias or prejudice that results in an inability to conduct fair and impartial proceedings.
Southern Casing of Louisiana, Inc., 809 So.2d at 1049-51.
In Suazo, the wife appealed from a judgment holding her in contempt of court for failing to permit her ex-husband to exercise physical custody of their minor child. Ms. Suazo also filed a writ application seeking review of the denial of a motion to recuse the trial judge on the basis of bias against her. Ms. Suazo alleged that the trial judge called her a liar, acted discourteously and insensitive toward her, and that his behavior and demeanor toward her was inappropriate. She also alleged that the judge was biased because he had unlawfully found her in contempt of court. The judge hearing the motion to recuse concluded Ms. Suazo failed to meet her burden of proof and denied the motion. This judge noted that “while the trial judge may have inappropriately used the term liar’ out ofj^frustration in connection with Ms. Suazo, such is not enough to show the trial judge is prejudiced.” Suazo, 970 So.2d at 651-52. Ms. Suazo sought supervisory writs in this court. After a review of the record, we found no error and denied writs. This court stated:
Not only were the trial judge’s actions proper and apparently warranted ... [w]e take offense and issue with the fact that in the documents submitted by counsel for Ms. Suazo, counsel distorted facts and implied that [the trial judge] engaged in illegal action, acted punitively, and was intractably biased. This [c]ourt admonishes counsel for this offensive, unprofessional behavior.
Suazo, 970 So.2d at 652.
The Suazo concurrence cautions “courts and litigants of the obvious dangers to our system of justice — the use of a motion to recuse as a litigation tool in response to unfavorable rulings.” 970 So.2d at 652.
MOTION AND HEARING
The Board’s motion for sanctions against Dr. Slaughter and Ms. Craft alleged that Dr. Slaughter’s two post-trial motions to recuse Judge Kelley and Judge Clark, as well as two motions for new trial based on the same allegations, were factually incorrect, baseless, frivolous, and an abuse of the legal system. Dr. Slaughter opposed the motion for sanctions, arguing that Judge Kelley lacked jurisdiction to hold the sanctions hearing because of the' pending writ application seeking review of Judge Clark’s ruling denying the motion to recuse herself. Dr. Slaughter argued another reason the judge lacked jurisdiction was his motion for suspensive appeal was pending and that appeal would review the *473 rulings on the motions to recuse. However, at the hearing, Judge Kelley noted that he had not ] 19yet signed the motion for suspensive appeal because the motion for sanctions was filed first.
Because the sanctions issue involved a determination of whether the motions to recuse were frivolous, the arguments of both counsel addressed the grounds for the motions to recuse.
During the sanctions hearing, Ms. Craft argued that Judge Kelley had not advised Dr. Slaughter of his relationship to the Commissioner of Administration and that Dr. Slaughter had “no idea that Ms. Davis was [the judge’s] wife, none, absolutely none.” Ms. Craft admitted that she “absolutely” knew of the relationship, but contended there was “no way I would have known that she was directly a party, issuing orders that you [Judge Kelley] relied on, except through the testimony of Althea Basil on the last day of trial.” Ms. Craft stated Dr. Slaughter did not become aware Ms. Davis was the judge’s wife until after the trial when she gave him a copy of an ethics opinion letter.
The letter from the Louisiana Supreme Court Committee on Judicial Ethics to Judge Kelley pertained to his handling of civil matters involving certain state agencies named as a party and required disclosure on the record by the judge of his wife’s position. The letter, which was introduced into evidence, indicates that in 2008, the Supreme Court’s committee on Judicial Ethics responded to Judge Kelley’s question as to whether it was ethically permissible for a judge, who is married to the Commissioner of Administration, to preside over civil matters in which the State of Louisiana is a named party. The Committee responded “in the affirmative, provided that the judge does not harbor actual bias toward any of the parties, and that none of the following entities is named in the lawsuit before the |13judge.” The letter specifically named 82 agencies, including the Division of Administration and the Louisiana Property Assistance Agency (LPAA). The opinion further stated the list of agencies “is not exhaustive, and the judge should periodically review the job duties of the Commissioner of Administration to evaluate whether there are other entities of which the Commissioner either serves as head, or as a member of the board of directors.” The letter further stated that:
[Disclosure on the record of the spouse’s position as Commissioner of Administration is required to maintain the manifestation of impartiality in all civil matters in which the State of Louisiana is a named party. In the event one of the parties objects to the judge presiding over the matter, the judge should either recuse himself, or instruct the objecting party to file a motion for recusation, which shall be decided in accordance with the Louisiana Code of Civil Procedure.
Ms. Craft argued the relationship was pertinent because two trial witnesses referred to Ms. Davis during their testimony. Ms. Craft claimed that Ms. Althea Basil, Southern University’s property manager, testified she received a letter from Ms. Davis ordering that computers in the Southern University System President’s office be tagged. Judge Kelley responded that the order from the Commissioner of Administration regarding tagging of state property was “a statewide order to everybody.” Judge Kelley also responded that because neither Southern University nor the Board were entities under the direction of the Commissioner of Administration, and neither the State of Louisiana nor one of the state agencies named in the ethics advisory opinion letter were named as parties in the lawsuit, he was not re *474 quired to notify the parties of his wife’s position or recuse himself. The other witness, Mr. Floyd Rector, a supervisor in the compliance office of the LPAA, testified about a property inventory he conducted in the Southern University System President’s office after Dr. Slaughter retired. During his 114testimony, Mr. Rector mentioned the Commissioner of Administration while explaining that La. R.S. 39:330 provided the options that are available to the Commissioner after an investigation of lost, stolen, damaged, destroyed or otherwise unaccounted for property. Ms. Craft also pointed to Judge Kelley’s behavior as a basis for recusal, including his comments that Ms. Craft was “singing a song” when she objected, and a discussion about a hunting trip with Mr. Unglesby. Judge Kelley noted that during the conversation about hunting, Ms. Craft commented that she did not hunt and the discussion was among “three people who have known each other a long time talking about stuff that had nothing to do with the hearing.” The judge further stated he had not shown any favoritism toward Mr. Unglesby and then related that Mr. Unglesby had tried to punch him in the nose during the judge’s first election.
Mr. Unglesby argued Ms. Craft was aware of the Supreme Court’s advisory ethics opinion when the wage suit was allotted to Judge Kelley, and she should have immediately filed the motion to re-cuse.
TRIAL COURT’S RULING
In rendering oral reasons for judgment and ordering sanctions, Judge Kelley concluded that the “recusal motion” contained false statements, was frivolous, and was not filed in good faith.[6] Judge Kelley also concluded the motion was not filed | ,5timely, and was to “postpone the effectiveness of the judgment.”
DISCUSSION
In this appeal, Dr. Slaughter argues that both motions to recuse were well grounded, filed in good faith, and warranted by existing law, and thus, the trial court erred in ordering sanctions and imposing attorney fees.
Dr. Slaughter contends that when Judge Kelley referred the motion to another judge, he essentially made a finding that the motion was based on a valid ground, and thus, was not frivolous.[7] Dr. Slaughter contends that based on the provisions of Article 154, the only reason judge Kelley referred the motion was because he concluded it presented a valid ground “on its face.” He further argues the judge cannot subsequently impose sanctions after finding there was a valid ground for the recusal motion.
*475 Article 154 mandates that if a valid ground exists, a judge shall either recuse himself or refer the motion to another judge. The article’s provisions merely mandate when a judge must refer a recusal motion. Nothing in the language of that article prevents a judge from referring all recusal motions without a determination as to the validity of the ground(s), or from referring a recusal motion the judge concludes lacks a valid ground. Accordingly, we reject Dr. Slaughter’s interpretation of Judge Kelley’s actions.
Next, Dr. Slaughter argues that the recusal motion was based on a valid ground that Judge Kelley was biased against him and Ms. Craft. As support for this conclusory allegation, he refers to Judge Kelley’s comments during the oral | ^reasons for judgment on the wage suit. Dr. Slaughter contends Judge Kelley’s comments that Ms. Craft could be subject to disciplinary charges for filing the frivolous motions and his “advice” that Dr. Slaughter sue Ms. Craft for malpractice are evidence of bias and prejudice. Dr. Slaughter further argues that Judge Kelley’s contempt for him and his attorney is apparent from the sanctions hearing transcript that shows the judge interrupted, yelled at, and chided Ms. Craft. He also contends that Judge Kelley was prejudiced because of his relationship to the Commissioner of Administration. As to the ground that the judge failed to reveal his relationship with the Commissioner of Administration, Dr. Slaughter points to another lawsuit, involving the Louisiana State University Board of Supervisors as a named defendant, in which Judge Kelley recused himself. Dr. Slaughter contends the Board in this case is no different from the LSU Board of Supervisors in the other suit, and that if Judge Kelley was required to recuse himself in that lawsuit, the same holds true in this matter.
Dr. Slaughter offers absolutely no evidence that Judge Kelley was biased, prejudiced, interested in the outcome of this case, or that he was biased or prejudiced toward or against any of the attorneys. Moreover, there is nothing in the record that supports a finding that Judge Kelley was biased in favor of the Board because his wife was the Commissioner of Administration and her name and/or position were mentioned during the testimony of two witnesses. It is clear from the evidence that Ms. Davis was not a party to the lawsuit, she was not a witness during the trial, and that the order to tag state property was not sent to Southern University as a result of particular events in this case and no state agencies were named as parties in the lawsuit.
|17As to the issue of timeliness of the motion to recuse, the Board argues that although Ms. Craft knew of the alleged grounds, she waited until after Judge Kelley rendered an adverse judgment to seek recusal. Moreover, the Board argues Dr. Slaughter and his attorney used the legal system to cause chaos and that he was aware the allegations were unfounded.
Dr. Slaughter relies on the Louisiana Supreme Court’s opinion in Radcliffe 10, L.L.C., as support for his position. That case involved a dispute over the value of assets Radcliffe purchased from the defendant. Prior to trial, the judge voluntarily disclosed that Radcliffe’s principal expert witness on the issue of damages had served as his campaign treasurer. After the trial, the judge rendered judgment in favor of Radcliffe and awarded damages in excess of 3.4 million dollars. Based on an investigation after the trial of the relationship between the expert witness and the judge, the defendant filed a motion to re-cuse. At the hearing on the motion, the presiding judge concluded the motion was *476 untimely because the trial judge had disclosed the relationship before the trial. Defendant’s application for supervisory writs in this court was denied without language. Judge Guidry dissented, with language that the motion was filed immediately after the defendants discovered the facts constituting the ground for recusal. The supreme court granted the defendant’s writ application in that court to decide whether the recusal motion was timely. The supreme court found the motion was filed timely and explained that while a practicing attorney, the judge represented the witness in several real estate transactions and civil actions and that they had a twenty-year relationship as business partners. The supreme court concluded the trial judge’s “voluntary disclosure was insufficient to provide the average person notice of the |1strue extent of their relationship, or put them on notice that they should make further inquiry into the facts of the relationship.” The court further noted that the relationship was more extensive than mere participation in a judicial campaign and that the defendant filed the recusal motion immediately after discovering the facts constituting the grounds for recusal. Id., 942 So.2d at 1075.
The facts of the instant case can be distinguished from those in Radcliffe 10, L.L.C. In this appeal, a review of the entire record supports a finding that the motion to recuse was untimely. The record reflects that Ms. Craft knew of Judge Kelley’s relationship to Ms. Davis for over a year before the trial. Also, at trial Ms. Craft introduced a letter sent from the LPAA to Southern University regarding unlocated property that had been assigned to the President’s office. The letterhead clearly indicated the LPAA was under the Division of Administration. Moreover, when this same letter was introduced by Mr. Unglesby, Ms. Craft acknowledged that she had already seen the letter. Thus, Ms. Craft was clearly aware, prior to trial, of the involvement of an agency under the Division of Administration. The knowledge of an attorney, actual or otherwise, is imputed to his or her client. See Stevison v. Charles St. Dizier, Ltd., 2008-887 (La.App. 3d Cir.3/25/09), 9 So.3d 978, 981, writ denied, 2009-1147 (La.10/2/09), 18 So.3d 116.
DECREE
After a complete review of the record, we find no manifest error in the trial court’s decision to impose sanctions against Dr. Slaughter. Nor did the trial judge abuse his discretion in the amount of sanctions and attorney fees imposed. The trial court’s judgment imposing sanctions in the amount of $500, attorney fees in | ^the amount of $7,500, and ordering costs imposed against Dr. Slaughter is affirmed.
AFFIRMED.
HIGGINBOTHAM, J. dissents and assigns reasons.

. The trial court signed the written judgment in the suit for past due wages on February 4, 2010. This Court’s opinion in Slaughter v. Board of Supervisors of Southern University and Agricultural and Mechanical College, 2010-1049 (La.App. 1st Cir.8/2/11), 76 So.3d 438, also rendered this date, addresses the appeal of that judgment.

. The record shows that the DeCuirs’ motion to withdraw as counsel for the Board was filed on December 16, 2009, and granted on January 6, 2010. The motion to recuse Judge Clark was filed on January 20, 2010.

. See Slaughter v. Board of Supervisors, 2010-0231 (La.App. 1st Cir.4/22/10) (an unpublished writ action).

.After the written judgment on the motion for sanctions was signed, Dr. Slaughter filed a motion to amend the notice of appeal (previously filed as to the judgment on the suit for past due wages) to include the judgment on the sanctions issue; the motion was granted and the notice of appeal was amended. However, the appeals of the two judgments were separately prepared and lodged in this court. The Board’s motion to consolidate the ap *469 peals was denied by this court, but we ordered that both appeals be assigned to the same panel and placed on the same docket.

. The transcript of the recusal hearing and Judge Fields' signed judgment is included in the appeal record in 2010 CA 1049. Pursuant to the provision of Uniform Rules of Louisiana Courts of Appeal, Rule 2-1.14 that provides ''[a]ny record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ,” we have reviewed the appropriate portions of the appellate record in 2010 CA 1049 that are necessary to adequately review the issues raised in the instant appeal.

. It is not clear whether Judge Kelley's ruling is based on a finding that the motion to re-cuse Judge Clark was frivolous. Although the motion for sanctions was based on the filing of both motions to recuse, there was little argument at the sanctions hearing pertaining to the motion to recuse Judge Clark. Judge Kelley's oral reasons refer to the recusal motion in the singular, but the judge did not indicate which specific motion. Nor does the written judgment provide a basis for the ruling. The arguments presented in the briefs of both appellant and appellee appear to presume that sanctions were based on a finding that both motions to recuse were frivolous. We need not address the arguments regarding the motion to recuse Judge Clark, because the award of sanctions is proper based on the frivolous nature of only one motion.

. Dr. Slaughter also presents arguments that the two motions for new trial were not frivolous. Although the Board's motion for sanctions were also based on a claim that the motions for new trial were frivolous, Judge Kelley’s oral reasons do not refer to the new trial motions and we do not address those arguments.